

RECEIVED
USDC CLERK, GREENVILLE, SC
2011 NOV -2 P 2: 32

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

---

GEORGE T. LEE,

     Plaintiff,

    v.

JAMES SINGLETON, MITCH CRAIG
CRISSY ADAMS, COUNTY OF OCONEE
STEVE JENKINS, LINDSAY SIMMONS,
BLAKE NORTON, SCOTT MOULDER,
UNIDENTIFIED OCONEE COUNTY
DEPUTY,CONNIE WEAVER,
THE JOURNAL, OCONEE PUBLISHING,
THE EDWARDS GROUP, ANDREW
SULLIVAN, JESSICA SIBLEY,
MICHAEL LEONARD,   BEVERLY
WHITFIELD, HORACE CRAIG. PAUL HARRIS,
STEVE EDWARDS,
        Defendants,

---

**COMPLAINT**

**FILE NO.**

**PLAINTIFF REQUESTS A JURY TRIAL FOR ALL ISSUES**

## COMPLAINT

Comes now the Plaintiff and for cause of action would state as follows

### I.  INTRODUCTION

This action arises under the First, Fourth, Fifth, Sixth and

Fourteenth Amendments to the United States Constitution; under federal

law, specifically 42 U.S.C. §§1983 and 1988; under South Carolina

common law    for intentional and/or negligent infliction of emotional

distress, conversion, loss of companionship, negligence, negligent

supervision, gross negligence, assault, excessive force, assault, false

arrest, false imprisonment, malicious prosecution, abuse of process and

civil conspiracy, under South Carolina statutes, and for a declaration of

unconstitutionality of a South Carolina statute.

While the individual Defendants were acting out of the scope of

their employment and under color of state law, the Defendants made an

unlawful stop of the Plaintiff that resulted in search and seizure of the

Plaintiff without probable cause, and resulted in the use of excessive

force against the Plaintiff and the denial by the Defendants of the Plaintiff

of certain constitutional and statutory rights.    The Defendants actions

caused injury to the plaintiff and denied Plaintiff his constitutional and

legal rights and    the Defendants perpetrated conversion of Plaintiff's

property.

Action is also brought against Oconee County for its failure to

properly train and supervise the individual Defendants in the proper use of

force to secure the arrest and search of a person exercising    his 1st

amendment rights where speech may cause excitement and unsettling,

and where the cops disagree on religious grounds with the statements of

a person exercising his 1st Amendment rights, and for indifference to the rights of the Plaintiff.

Action is further brought against Oconee County for its omission or commission in establishing proper dispatch policy, and for its policies, procedures, practices and customs that result in excessive force and its policies and procedures that enable and permit invalid warrants of arrest and illegal search.

All Defendants are sued in their individual and official capacities acting outside the scope of their official duties but acting under color of state law and custom and usage and are sued for their official acts.

## II. JURISDICTION AND VENUE

¶1.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331, 1332, 1343, and 1367, and venue is properly set in the United States District Court for the District of South Carolina pursuant to 28 U.S.C. §1391.

¶2.    The causes of action alleged herein arise from factual allegations occurring in this federal judicial district.

¶3.    On information and belief, it is alleged that each of the named defendants resides in this federal judicial district.

¶4.    Plaintiff resides in the herein federal judicial district.

¶5.    Plaintiff has resided in the herein federal judicial district since 1996.

## III. PARTIES

### A. Plaintiff

¶6.    The Plaintiff, GEORGE T. LEE, is a citizen and resident of Walhalla, South Carolina.

### B. Defendants

¶7. Defendant, JAMES SINGLETON, on information and belief, is a citizen and resident of Oconee County, and was at all times material to the allegations in this complaint employed as the elected sheriff of Oconee County.

¶8.    Defendant sheriff is responsible for the training and supervision of Defendants, Craig, Jenkins, unidentified deputy, and the Oconee County dispatchers.

¶9.    Defendant Singleton, as sheriff of Oconee County is further responsible for making and/or implementing policy and practices used by cops and dispatchers of Oconee County regarding arrest warrants

-4-

in obscenity cases, searches in obscenity cases, use of force, and limitations of jurisdiction in obscenity cases.

¶10. Defendant, MITCH CRAIG, is a deputy sheriff supervised by Defendant Singleton, and is a k-9 officer. Defendant Mitch Craig arrested the Plaintiff without probable cause at the instigation of his religious father, defendant Horace Craig

¶11. In the instant case, Defendant Mitch Craig is accused of participating in the arrest of the plaintiff, with out probable cause, of using illegal excessive force on the Plaintiff, and of searching, disarming, and battering and abusing the Plaintiff in the course of an illegal arrest and illegal search.

¶12. Defendant Craig used his k-9 canine, a huge, totally black German Shepard to cause terror to the Plaintiff, by allowing his k-9's slavering huge jaws and teeth to come within inches of the Plaintiff's groin when the Plaintiff was on the ground.

¶13. Defendant Craig requested the arrest warrant without jurisdiction to make such a request according to South Carolina statute as Defendant Craig is not a solicitor.

¶14. Defendant CRISSY ADAMS, is the elected solicitor for the 10th judicial district of South Carolina, and  is the only official,

-5-

pursuant to South Carolina Law Section 16-15-435, that can request a search or arrest warrant for violations of South Carolina Law Section 15-15-305.

¶15. Defendant COUNTY OF OCONEE, is the employer of the Defendants, and the County Council is responsible for training of the defendants in not using excessive force, protection of 1st Amendment rights, and control of police and solicitors to prevent issuance of false arrest warrants.

¶16. Defendant STEVE JENKINS is a sheriff's captain who supervised and participated in the false arrest and illegal search and physical beating and abuse of the Plaintiff, and at defendant Singleton's behest, had the Plaintiff's concealed weapons permit revoked up false statements to SLED.

¶17. Upon information and belief Defendant Jenkins is a citizen and resident of Oconee falsely arrested and searched the Plaintiff and invaded the Plaintiff's privacy and searched the Plaintiff's property. In violation of Plaintiff's 4th amendment rights. Defendant Jenkins stated to the Plaintiff that California v Cohen, 403 U.S. 15 applied only in California!

¶18. Defendant, LINDSAY SIMMONS, is an assistant solicitor-general is subordinate to Defendant Adams. Defendant Simmons denied

the Plaintiff his statutory right to a preliminary hearing by agreement with Defendant Adams because the arrest warrant was void of a criminal charge, had no probable cause, and was not requested by a solicitor and Defendant Simmons participated on the civil conspiracy against the Plaintiff.

¶19. Defendant, BLAKE NORTON,  is a Oconee County magistrate, and on information and belief, is a citizen,  and resident of this judicial district.

¶20.  Defendant Norton is accused herein of violating the 4th Amendment rights of the plaintiff by ordering the false arrest of the Plaintiff as Defendant Norton lacked subject matter jurisdiction to issue an obscenity warrant that was not requested by a solicitor, and Defendant Norton issued a warrant with out probable cause.

¶21. Defendant SCOTT MOULDER is the administrator of Defendant Oconee County and as such is responsible for developing or not developing County policies regarding arrests and searches and protection of 1st amendment rights of citizens in collaboration with the elected sheriff of Oconee County

¶22. Defendant  ANDREW SULLIVAN is a reporter and writer for a Seneca, South Carolina newspaper, THE JOURNAL.

-7-

¶23.  Defendant JESSICA SIBLEY is a reporter and  writer for a Seneca, South Carolina newspaper, THE JOURNAL

¶24.  Defendant THE JOURNAL is  local newspaper based in Seneca, South Carolina and employs Defendants Andrew Sullivan and Jessica Sibley.

¶25.  Defendant MICHAEL LEONARD  is the publisher of THE JOURNAL.

¶26.  Defendant VICKIE WEAVER is a clerk in magistrate Norton's office, and is responsible for assigning dates for preliminary hearings. Defendant Weaver denied the Plaintiff his right to a probable cause hearing within ten days of Plaintiff requesting a probable cause hearing.

¶27.  Defendant HORACE CRAIG is the father of Defendant Matthew Craig, at whose request the Defendant was arrested without probable cause.

¶28.  Defendant BEVERLY WHITFIELD is the elected county clerk of Oconee County, and responsible for denying the Plaintiff his 14th Amendmen and 1st Amendment t rights to sue the sheriff of Oconee

-8-

County for claim and delivery and for denying the Plaintiff his his 1st Amendment and 14th Amendment right to file a petition for writ of mandamus.

¶29. Defendant PAUL HARRIS is a Walhalla, SC, police officer who seized and searched the Plaintiff without probable cause or reasonable suspicion, and assaulted the Plaintiff.

¶30. Defendant STEVE EDWARDS is the registered agent for receipt of service for Defendant THE EDWARDS GROUP which owns OCONEE PUBLISHING which owns defendant THE JOURNAL.

## IV. FACTS OF THIS CASE

¶31   On November 8, 2010, Plaintiff was on public property, in the town of Walhalla, South Carolina, displaying a poster sign, that said, among other things, "Fuck Israel."

¶32. The Plaintiff was displaying such a sign because the Plaintiff wanted to criticize Israel for snubbing and embarrassing the Vice President of the United States of America, Mr. Joe Biden, who was on an

official visit to Israel, by announcing an increase in settlement construction in Jerusalem, thereby humiliating Vice President Biden and dishonoring the United States of America.

¶33. On the day in question, November 8, 2010, the Plaintiff was sitting on his own chair, displaying his 'f' Israel sign, waving to people, enjoying the repartee' with citizens, when up walked Defendants, Jenkins, Craig, Horace Craig, and unidentified Oconee Sheriff's Deputy.

¶34. On information and belief, the Plaintiff alleges that the Defendant sheriff viewed and approved the illegal arrest and search of the Plaintiff by his officers.

¶35. At the time, the Plaintiff was exercising his 1st Amendment rights to free speech and free press by criticizing Israeli actions that embarrassed Vice President Mr. Biden, and carried a concealed weapon for which he was licensed to carry by South Carolina.

¶36. The Plaintiff called out to the approaching defendants, Jenkins, Matthew Craig, unidentified deputy, and defendant Horace Craig that he had a concealed weapons permit and without further ado, Defendant Matthew Craig forcibly grabbed the Plaintiff by the back of his collar and forced Plaintiff to stand and reached around the Plaintiff and

-10-

stuck his hand down in Plaintiff's right front pants pocket  and illegally seized possession of Plaintiff's .25 caliber Taurus semi-automatic pistol that Plaintiff loved dearly.

¶37.  Defendant Craig had no legal right to seize Plaintiff's weapon or to disarm him, as Plaintiff had not committed a crime and the police had no articulable suspicion that the Plaintiff had committed a crime and the Plaintiff was not under arrest.

¶38.  The Plaintiff had stored some poster signs between his chair and a tree and had his chair pressed up against the poster signs that were upside down.

¶39.  Under the Plaintiff's chair  attached to a clipboard were some writings of the Plaintiff, in which Plaintiff argued that 2nd Amendment rights could be defended against state usurpation by force, if the state attempted to deny citizens their 2nd Amendment rights and forcibly disarm the people.

¶40.  The writings did not contain in any way a call to imminent violence.

-11-

¶41. Plaintiff's writings explored the theoretical possibility of a similarity between the defense of American rights in 1776 by armed force and a current similar defense of the right to keep and bear arms.

¶42. The Plaintiff asserts that he has a 1st Amendment right to write what was on the flyers and to possess and display such flyers and the cops should have know of this well established right. (Brandenberg v Ohio, 395 U.S. 444 (1969))

¶43 None of the writings had been distributed to the public, and such writings were protected by the 1st Amendment as adjudicated by the U.S. Supreme Court.

¶44. Defendant Matthew Craig and the unidentified Oconee County deputy sheriff with some force pulled the Plaintiff away from his chair so that Defendant Jenkins had access to Plaintiff's signs, chair, and Plaintiff's other private property.

¶45. Unidentified Oconee County deputy sheriff stabbed the Plaintiff in his anus with a long sharp object and made the Plaintiff trip as he jumped away from the stabbing object. Plaintiff saw the object and it was grayish in color.

¶46. Plaintiff said to Defendant Jenkins that he needed a search warrant to search through the signs as privacy rights attached, no weapons were therein, and the Plaintiff could not access the signs.

¶47. Defendant Jenkins replied that he "didn't need any warrant in South Carolina to search a commie motherfucker like you", and he continued searching through Plaintiff's property,  At this point, the Plaintiff was tazed by a hand held device upon information and belief. The Plaintiff cannot say who of the defendants tazed him. The Plaintiff experienced a severe burning as Plaintiff was tazed when he was prone and from behind and between his legs. Several minutes passed while the defendants searched the Plaintiff and  abused him.

¶48.  Defendant Jenkins said to the Plaintiff that this was the "bible belt" and "Christ was lord here and Israel was Christ's first love, first the jew and then the gentile."

¶49.  Plaintiff believed and felt he was being punished and arrested and tazed for not subscribing to the religious beliefs of the police and Oconee County government, which held that Israel was prophesied in the bible. Defendant Jenkens ordered the other cops to stand the Plaintiff on his feet.

¶50. Defendant Jenkins asked the Plaintiff if he "believed in God and the bible".

¶51. When the Plaintiff, even though terrified of the k-9 dog and the cops, snickered and snorted though his nose in ridicule at such a jejune, ludicrous, and stupid idea, Defendant Matthew Craig and the unidentified deputy forced the Plaintiff to his knees by a devastating hammer lock (not only did the defendants get the Plaintiff in a hammer lock, they pulled the Plaintiff's elbow away from his body, thereby causing the Plaintiff intense agony and by leaning heavily on the Plaintiff's bent-down head.

¶52. Defendant Mitch Craig kicked and kneed the Plaintiff in the back of his legs to force him to the ground.

¶53. Unidentified Oconee County deputy sheriff again stabbed the Plaintiff in his anus with the aforementioned object. It really hurt a lot.

¶54 Defendant Mitch Craig and Defendant Jenkins did not attempt to stop the unknown deputy from stabbing the Plaintiff in Plaintiff's anus, even though Defendant Jenkens was the nominal supervisor of defendants Craig and unknown deputy.

¶55.   Then Defendants Craig and unknown deputy forced the Plaintiff    onto the ground on his stomach, as Defendant Jenkins screeched at the Plaintiff to "get on the ground, slime ball, on the ground atheist motherfucker".

¶56.   Plaintiff never offered the slightest resistance to the defendant police officers.

¶57   At this point, Defendant Matthew Craig allowed the massive snarling jaws of his k-9 to  come very close to the Plaintiff's private parts while Defendant Matthew Craig was broadly smiling at Plaintiff's terror

¶58.   Defendant Horace Craig, father of defendant Matthew Craig, kicked the Plaintiff in the hips and ribs  about 8-10  times with force and stated to the Plaintiff that "I told you to shut your dirty mouth, you fucking animal anti-christ."

¶59.   The attendant cops did not attempt to stop defendant Horace Craig from kicking the Plaintiff.

¶60. Defendant Jenkins proceeded to unconstitutionally rummage through the Plaintiff's signs and other property until he came to the sign that said "Fuck Israel."

¶61. Defendant Jenkens said "This looks like a breach of peace sign." He held up the sign saying "Fuck Israel."

¶62. The Plaintiff responded that Cohen v California, 403 U.S. 15 (1971) protected Plaintiff's use of the 'f' word.

¶63. Whereupon, Defendant Jenkins stated that didn't apply here as "we are in fucking South Carolina, not California, motherfucker".

¶64. Defendant Matthew Craig placed his knee on the neck of the prone Plaintiff, and said "enough out of you, motherfucker."

¶65. Defendant Matthew Craig seemed to be holding the neck of his k-9 dog very tightly, but the slavering jaws came very close to the immobilized face of the Plaintiff and some saliva from the k-9's slavering jaws dripped on the Plaintiff's face and the Plaintiff could feel the hot breath of the raging animal on his face.

¶66. Defendant Mitch Craig almost broke the Plaintiff's neck as the Plaintiff had turned his head to talk at Defendant Jenkins.

-16-

¶67. The un-identified deputy told the Plaintiff to "shut your pie hole, you anti-christ cocksucker."

¶68. Based on what Defendant Jenkins had said to the Plaintiff, the Plaintiff assumed he was being arrested for breach of peace and for not believing in the religion of the cops.

¶69. None of the Defendants stated to the Plaintiff the reason for his arrest, even thought the Plaintiff asked several times asked what he had done to be arrested.

¶70. At a point in time, the Defendants had accumulated all of the Plaintiff's property, namely, his metal folding chair, a Buck pocket knife, a personal canister of pepper spray, a clip board containing writings of the plaintiff, which had not been distributed, a Palestinian and Iranian national flag, and Plaintiff's beloved little .25 caliber Taurus pistol, all of which was "entered into evidence" as defendant Matthew Craig's report stated on his "incident report" and placed Plaintiff's property in the police k-9 SUV.

¶72. Defendant Craig's report makes no mention of the seizure of Plaintiff's writings on the subject of defense of 2nd Amendment rights.

-17-

¶73. The Plaintiff had no idea what his chair was evidence of, yet the Defendant solicitor refused the request of the Plaintiff  to order Defendant Singleton to release Plaintiff's chair after the obscenity charge was nolle prossed  by Defendant Adams on January 14, 2011, just prior to a preliminary hearing, to which the Plaintiff was statutorily entitled within 10 days after the Plaintiff requested it on November 10, 2010 and which preliminary hearing Defendant Simmon's husband was to adjudicate and which hearing was denied to the Plaintiff by defendant Vickie Weaver.

¶74. The Plaintiff was handcuffed exceedingly tightly and it caused Plaintiff great pain in his wrists in addition to his arms being squeezed together behind his back causing  Plaintiff excruciating pain due to arthritic shoulders.

¶75. As the Plaintiff screamed in agony, Defendant Jenkins opened the door of the police SUV and unidentified deputy #1 lifted the Plaintiff's arms high like a lever  and rapidly propelled the Plaintiff into the car.

¶76. Because Defendant Jenkens and the unidentified deputy partially closed the car door into Plaintiff's path, the Plaintiff's

shoulder  struck the corner of the car door as did  his neck and Plaintiff struck his head on the top of the car door jam, rendering the Plaintiff unconscious.

¶77.  Additionally, as the Plaintiff was forced past defendant Matthew Craig, the k-9 was allowed to snap at the Plaintiff's groin.

¶78.  Then  someone  kicked  the  Plaintiff  on  his  behind. Plaintiff believes that the Defendant Horace Craig was the person who kicked the Plaintiff.

¶79.  Plaintiff wound up and came to on his knees in the footwell of the passenger's side in the cop car with part of his body on the passenger car seat.

¶80.  The Plaintiff saw  Defendant Singleton through the driver's side window of the cop SUV and he was laughing and praising the unidentified deputy who has stabbed the Plaintiff in his anus.

¶81.  As the Plaintiff was being driven to the jail, unidentified deputy  pressed with great force in the  area just under Plaintiff's right ear with an device that felt like a key, causing Plaintiff great agony.

¶83. Unidentified deputy said to Plaintiff "you motherfucker, this is a Christian community and it is a crime to be anti-Israel and to use cuss words."

¶84. At the time the Defendant officers arrested the Plaintiff, on information and belief, the Defendant officers were acting on a telephone tip from Defendant Horace Craig, who was of unknown reliability as an informant, was the father of defendant Matthew Craig, who called the Oconee County sheriff that the Plaintiff was displaying an offensive sign and obscene sign.

¶85. This information is in Defendant Mitch Craig's incident report. To the Plaintiff's knowledge, displaying an offensive sign that is protected by the U.S. Constitution doesn't violate south Carolina law.

¶86. Plaintiff had previously that day confronted the Horace Craig and Plaintiff had stated to the informant that he had a constitutional right to display the 'f' word on a sign.

¶87. The Defendant Horace Craig stated to the Plaintiff that he didn't care that the Plaintiff had such a right, that the defendant Horace Craig didn't want the Plaintiff displaying the 'f' word so that the defendant Horace Craig's grandson could see that word.

-20-

¶88. Defendant Horace Craig was determined to stop the display of the 'f' word regardless of the Plaintiff's rights and was willing to abuse the justice system to silence the Plaintiff, and did in fact abuse the justice system to silence the Plaintiff and Defendant Horace Craig instituted a malicious prosecution against the Plaintiff.

¶89. Defendant Horace Craig induced and cajoled and pressured the Oconee County sheriff, Jenkins, Matthew Craig, unknown deputy, and Blake Norton to falsely arrest the Plaintiff and Defendant Horace Craig thereby shares liability for falsely imprisoning the Plaintiff

¶90. Unidentified dispatcher(s) unconstitutionally due to lack of proper training by Defendant Oconee County and Defendant sheriff in 1st Amendment cases,  misinterpreted information from an unknown and unreliable informant and failed to  inform the police of the actual situation. The unknown informant was Horace Craig. Defendant Horace Craig was imposing his religious beliefs about Israel on the Plaintiff

¶91. At the time of the above-mentioned search and seizure of the Plaintiff NONE of the Defendants had in their possession any warrant issued by a judge, court, or magistrate authorizing a search of the Plaintiff or his arrest and themselves had no probable cause to arrest

-21-

or search the Plaintiff or seize the plaintiff's property or imprison the Plaintiff or arrest the Plaintiff becvause of his irreligious beliefs.

¶93.   The complained of actions of the Defendants was outside the scope of their official duties, carried out under color of state law, and was motivated by actual fraud, actual malice, intent to harm the Plaintiff and was a crime involving moral turpitude.

¶94.  Subsequent to the Plaintiff's arrest and search, an invalid arrest warrant, #N-137262 was served on the Plaintiff while the Plaintiff was in the jailhouse. The invalid arrest warrant

¶95.   (1)did not charge the Plaintiff with a crime;

¶96.   (2) was not requested by a  solicitor;

¶97.  (3) and  was not supported by probable cause, and;

¶98.   (4)  which was issued by Defendant Norton who did not have subject matter jurisdiction to issue the warrant,

¶99. The Plaintiff was incarcerated in the county jail  on 'temporary custody order" when he was arrested by the  invalid arrest warrant.

-22-

¶100.The police didn't have even an articulable suspicion that the Plaintiff was violating South Carolina laws. And, at the time there was no need for the cops to make a quick arrest; there was plenty of time for an investigation and to get a warrant prior to arrest.

¶101.An investigation would have determined that the Plaintiff had not violated any law of South Carolina or Oconee County.

¶102.The arrest warrant for disseminating obscenity is attached to this complaint as EXHIBIT A.

¶103.The blue ticket served on the Plaintiff on January 14, 2011, is attached hereto as EXHIBITB.

¶104.The blue ticket was employed by the police and the solicitor to arrest the Plaintiff on January 14, 2011.

¶105.The Plaintiff did not get the probable cause hearing to which he was statutorily entitled and such denial of a probable cause hearing by the Defendant Magistrate's court clerk Vickie Weaver, and solicitor and assistant solicitor constitutes a denial of due process and a violation of Plaintiff''s 14th Amendment procedural and substantial constitutional rights, under color of state law and usage.

¶106.          When the Plaintiff was bonded out later that night, on November 8, 2010, the Plaintiff was confined illegally for an additional 5 hours by the jail house supervisor after Defendant Norton had signed the bond releasing the Plaintiff . On information and belief the Plaintiff was detained further on the orders of Defendant Norton, because Defendant Norton was retaliating against the Plaintiff because of Plaintiff's dissident irreligious beliefs.

¶107.          Defendants Craig, Jenkins, unknown deputy sheriff and unknown dispatcher did not have  adequate and proper training from Defendant sheriff and Defendant Oconee county to adequately understand free speech issues.

¶108.          Defendants Craig, Jenkins, unknown deputy sheriff had no authority to arrest and search the Plaintiff regarding the law with which Plaintiff was charged with violating, as said defendants legally were required  to have the solicitor request a warrant for an search and/or arrest on obscenity charges, and for the warrant to be valid.

¶109.          Defendants' actions were not within the scope of their official duties, and constituted actual fraud, actual malice, intent to harm and were a crime involving moral turpitude.

-24-

¶110.    At the time of the false arrest set forth herein, Plaintiff was emotionally happy and physically healthy, active and fully engaged in normal day-to-day activities which included a profound enjoyment of the shooting sports and a love of firearms and the technicalities and ballistics and science thereof.

¶111.    Since the time of the false arrest, and illegal search and his embarrassment in the news media, the seizure of his property, and the application of excess force to him by Oconee county deputies and Oconee jail guards, the Plaintiff's ability to perform and enjoy his usual activities, including family and activities have been seriously and forever impaired.

¶112.    Plaintiff walks with his head hung down when in public ashamed to look people in the eye and is severely depressed.

¶113.    The charge that was leveled against the Plaintiff was a felony charge with a penalty of five years imprisonment and $10,000 fine that did not go away when the Assistant Solicitor illegally ended the prosecution of the charge for lack of evidence to convict.

¶114.     Even though that charge is, so to speak, asleep, it can be awakened at any time at the whim of the solicitor , and there is no statute of limitations in the State of South Carolina for this felony.

¶115.     Even if the charge is expunged, South Carolina Law Enforcement Division (herein after SLED) will have a record of the charge, and South Carolina Law Enforcement Division has an unsavory reputation for false arrest and beating confessions out of defendants and for financial cupidity and for stealing narcotics being held as evidence.

¶116.     This felony charge will hang over the Plaintiff's head for the rest of his life and the Plaintiff can have no quiet and rest in his life because of this virtually continually pending felony charge.

¶117.     After the charges were *nolle prossed* by the Defendant solicitor and Defendant assistant solicitor, Plaintiff telephoned South Carolina Law Enforcement Division  to get his concealed weapons permit reinstated.

¶118.     A representative of SLED  told the Plaintiff that he had to send in to SLED "something" to show that the charge had been dismissed.

-26-

¶119.     SLED already had the information SLED was requesting of the Plaintiff so the Plaintiff believed that this was SLED's way of giving the Plaintiff  the double talk, run-around, BS about his concealed weapons permit, and that he would  never regain the  permit.

¶120.     The  Defendant sheriff had the legal ability to deny the Plaintiff a concealed weapons permit for all time. The Defendant sheriff had the legal ability to ask SLED for issuance of Plaintiff's concealed weapons permit. But, the sheriff had already admitted in a newspaper interview that he had provided false information to SLED justifying the revocation by SLED of Plaintiff's concealed weapons permit.

¶121.     At trial, the Plaintiff will show that this was Defendant Singleton's intention all along: by legal means or by crooked means  to disarm and stop the Plaintiff from writing and publishing and to punish the Plaintiff for his belief that Israel was not significant in a religious sense.. And to deny the plaintiff his 1st amendment rights to petition the government by silencing the Plaintiff.

¶122.     The Plaintiff said to the SLED representative that SLED should call Defendant Sheriff Singleton  because it was Defendant Singleton in the first place who asked SLED to revoke Plaintiff's permit.

-27-

Plaintiff said to SLED that since SLED and the sheriff had conspired to revoke the Plaintiff's permit, that the two should conspire to reinstate it.

¶123.    The Plaintiff told SLED that SLED had a record of all warrants and dismissals on its computers, and that the Plaintiff should not be required to lift a finger to re-acquire what was illegally take from him. The SLED representative hung up the phone.

¶124.    The Plaintiff had been a long-time collector of firearms, particularly Savage rifles and Savage pistols, which Plaintiff loved and considered works of manly art, and old ammunition therefore.

¶125.    Upon being charged with the felony, of which he was innocent, Plaintiff was forced to quickly sell or destroy approximately $78,000 worth of rifles, reloading equipment, pistols, ammunition, and other accoutrements of the shooting sport suddenly forbidden to the Plaintiff by federal and state law because of the invalid felony warrant and his arrest without probable cause.

¶126.    Defendant Singleton admitted in the news media that he gave information(false information, albeit) to SLED to effectuate the revocation of the Plaintiff's concealed weapons permit. "We got him disarmed and off the street," Sheriff Singleton boasted in a media

-28-

interview. Defendant Singleton meant that he had silenced the Plaintiff from crictizing Israel and law enforcement  when he said " We got him . . . off the street." When defendant said "we," Defendant singleton meant himself and the  defendants, Norton, Adams, Mitch Craig, Horace Craig, Jenkens,  and unidentified deputy.

¶127.    Such information given to SLED by Defendant Singleton, and defendant Jenkins. had to be false and in fact was false as the Plaintiff had committed no crime. Defendant  Singleton thereby defamed the Plaintiff and denied the Plaintiff his 14th and 1st, and 4th Amendment  rights, too. Defendant Jenkens admits against his interest in a supplemental report that he called SLED with defamatory that led to SLED revoking the Plaintiff's concealed carry permit.

¶128.    For the tort of defamation and denial of due process rights. Plaintiff demands punitive judgment against Defendant Singleton in the amount of $4,000,000.00

¶129.    The Plaintiff expected the momentary arrival of federal, state, and local police  in militaristic uniforms, soviet-style helmets, bayonets, and probably armoured vehicles with helicopter support and artillery, and automatic weapons to arrest the Plaintiff for

-29-

possession of firearms by a person charged with a felony, and in which his wife would be inhumanely treated, most likely beaten up and felt up, stripped search and cavity searched and jailed and cruelly treated with sensory deprivation, questioned and incarcerated by brutal communist-like state terror shock police.

¶130.    After being arrested on false charges and severely manhandled, here is nothing the Plaintiff would not put past the Defendant sheriff. The sheriff himself is under suspicion because $1,000,000.00 worth of crack cocaine and crystal meth disappeared from the sheriff's department evidence lockers last year, but the sheriff says he knows nothing about it. Now the sheriff wants to retire within a year with a $1,000,000 .00 nest egg.

¶131.    As the Plaintiff was charged with a felony and the federal penalty for the Plaintiff's possession of firearms was 15 years per firearm, Plaintiff anticipated that Defendant Singleton was sufficiently malicious, brutal, and mendacious to inform federal police, and SLED, that the Plaintiff possessed firearms.

¶132.    Plaintiff either destroyed or sold his whole firearms collection, many of which had a nostalgic value, in addition to a

-30-

monetary value, to the Plaintiff representing high moments in the Plaintiff's life.

¶133.    Defendant Singleton did return to the Plaintiff his Taurus .25 caliber semi-automatic pistol.

¶134.    Plaintiff, however, realized that Defendant Singleton had  set up the Plaintiff and Plaintiff immediately sold the pistol for well below market value. Plaintiff loved that little pistol.

¶135.    Plaintiff cannot have the concealed weapons permit re-instated until the Plaintiff has been found  not guilty of the felony charge, which will not happen because there will be no trial as the defendant solicitor and defendant Craig, in collusion with the Defendant Singleton,  has declined to prosecute the Plaintiff for the obscenity charge, thus accomplishing  Defendant Singleton's purpose of disarming the Plaintiff, as Defendant Singleton stated to the news media

¶136.    Defendant Singleton knew, and had to know, that the Plaintiff was not guilty of a felony, and that any statements made by Defendant Singleton and defendeant Jenkens to SLED or to the news media that the Plaintiff was guilty of perpetrating a felony were false and defamatory and were fraudulent.

¶137.     Plaintiff's rights to free press and free speech and right to dissident religion  have been utterly destroyed by the Defendants's malicious acts and false arrest and illegal search  and malicious prosecution.

¶138.     While the Plaintiff was released on bond, Plaintiff was required by the bond conditions to 'be of good behavior.'

¶139.     Thereby,     Plaintiff     was     constructively incarcerated.

¶140.     Since criticizing Israel was by definition bad behavior for which the Plaintiff had been arrested and jailed and repeatedly beaten up , Plaintiff was denied his rights to religious freedom and right to be free of religion on these matters on pain of re-arrest and re-incarceration, to be again abused by the police and jail house guards.

¶141.     As the Plaintiff sees it, he can neither speak nor publish freely nor exercise his anti-religion nor possess a fire arm in fear the sheriff or the solicitor or assistant solicitor will  revive the dismissed felony  charges and destroy the Plaintiff's life and take away from him the joys and pleasures that make life worthwhile.

¶142.     The Defendants did a terrible, terrible thing to the Plaintiff. A terrible thing seemingly without end.

¶143.     In committing the acts complained of herein, Defendants Singleton, Craig, Jenkins, Adams, Simmons, unidentified sheriff's deputy and Horace Craig acted under color of state law by illegally arresting, illegally searching, and illegally jailing the Plaintiff with no basis in law or fact to do so.

¶144.     The arrest warrant, served on the Plaintiff, did not accuse the Plaintiff of a crime, did not state probable cause to arrest or search and was invalid because the warrant was not requested by a solicitor as was required by South Carolina statute, and had been issued outside the jurisdiction of the Defendant Norton who lacked subject matter jurisdiction to issue the warrant. The South Carolina statutory definition of obscenity requires that the obscene words describe "sexual conduct." The defendants cannot reasonable argue that "fuck israel' describes sexual conduct.

> "This is not, for example, an obscenity case. Whatever else may be necessary to give rise to the States' broader power to prohibit obscene expression, such expression must be, in some significant way, erotic. It cannot plausibly be maintained that this vulgar allusion to the Selective Service System would conjure up such psychic stimulation in anyone

-33-

likely to be confronted with Cohen's crudely defaced jacket. "Cohen v California, 403 U.S. 15

¶145.    Defendant Craig lacked jurisdiction to request the warrant because , technically, a police officer doesn't have the authority to arrest for violation of South Carolina Law Section 16-15-305 without the permission of the solicitor.  Copies of South Carolina Law Section 16-15-305 and 435 are appended to this complaint.

¶146.    The South Carolina Law Section 16-15-435, requires solicitor oversight of police and magistrates in obscenity matters.

¶147.    The  complained of acts of the Defendants were not  within the scope of their official duties, but were perpetrated under color of state law and usage, as a solicitor had not requested  the invalid warrant, constituted actual fraud, actual malice, intent to harm and were a crime involving moral turpitude.

¶148.    As  a  direct  and  proximate  result  of  the intentional and malicious acts of the defendants, under color of state law and usage,  Plaintiff has sustained and continues to experience severe mental and physical pain and fear and suffering and injury in an  amount that will be set out in the prayer for relief.

-34-

¶149.    Under 42 U.S.C. § 1983 Plaintiff is entitled to compensatory and punitive compensation for the constitutional and tortuous harms that the Defendants inflicted upon him, including personal injury, loss of liberty, and loss of property.

## V.  CAUSES OF ACTION

COUNT 1
Violation of Civil Rights Pursuant to Title 42 U.S.C §1983
( False Arrest and Unconstitutional Search)

¶150.    Plaintiff    re-alleges relevant factual allegations set fourth in this complaint in ¶¶31-149

¶151.    In committing the acts complained of herein, on November 8, 2010, defendants, Singleton, Norton, Jenkens, Mitch Craig, Horace Craig and unknown deputy,  acted under color of state law by asserting their authority and falsely arresting, searching and beating up the Plaintiff with no  basis in law or fact to do so.

¶152,    In violating Plaintiff's right to be free from false arrest, unconstitutional search, and excessive force, and to be irreligious the defendants, Singleton, Norton, Jenkens, Mitch Craig, Horace Craig and

unknown deputy violated the Plaintiff's $1^{st}, 2^{nd}$   4th  5th, 6th and 14th Amendments to the Constitution of the United States.

¶153.    As a direct and proximate result of the violation of his constitutional rights to be free from false arrest, excess force,  and unconstitutional search by the defendants, Singleton, Norton, Jenkens, Mitch Craig, Horace Craig and unknown deputy, Plaintiff suffered serious personal and mental injuries and special damages as alleged in this complaint and is entitled to relief under 42 U.S.C. §1983.

## COUNT 2
### Violation of Civil Rights Pursuant to Title 42 U.S.C §1983
### (Denial of 6th Amendment Right)

¶154.    The Plaintiff   re-alleges and incorporates by reference the relevant allegations set forth in this complaint in ¶¶ 31-149. Plaintiff  asserts that his constitutional rights were violated by Oconee County and the Magistrate's Court by such a trial and requests money damages therefore as set out in the demand for relief.

¶155.    On January 14, 2011, after the Plaintiff was told by Defendant   Adams that the obscenity charge was not being prosecuted and that there would be no preliminary hearing. Plaintiff

-36-

stated to Defendant Adams that he had a right to a preliminary hearing to clear his name and eliminate the charge. Defendant Adams stated that "that was not what the sheriff wants. We have this charge hanging over your head. That's what we want. We want you to shut your "friggen "mouth. No more signs. Obey Christ and respect his home."

¶156.    The Plaintiff witnessed and heard Defendant Adams tell Defendant Matthew Craig to "... write this asshole a ticket for breach of peace. Don't take him into custody, but search him. " Defendant Mitch Craig meekly obeyed defendant Adams. Defendant Adams refused to release the Plaintiff's property to the Plaintiff.

¶157.    In ordering Plaintiff's arrest without probable cause, Defendant Adams was not performing the functions of a solicitor, but those of a police officer and therefore does not have absolute immunity.

¶158.    Defendant Simmons said to Plaintiff, "Yes, we have to see that you don't do potty mouth around our young'uns."

¶159.    The Plaintiff clearly saw Defendants Adams and Simmons smile at each other in mutual affirmation that the Plaintiff was to be made to keep silent.

-37-

¶160.    Defendant Mitch Craig looked up from writing the citation and joined in mutual smiling.

¶161.    When Defendant Mitch Craig presented the citation to the Plaintiff and before the search,  Plaintiff asked Defendant Mitch Craig  what the Plaintiff had done to be arrested "sixty days after the fact," Defendant Craig rubbed the ticket on the Plaintiff's face.

¶162.    The Uniform Traffic Citation contains a false statement to the effect that the Plaintiff was arrested for breach of peace on November 8, 2010, when in fact the Plaintiff was arrested January 14, 2011 for breach of peace.

¶163.    When an initial hearing was held on the above-mentioned charge of breach of peace, defendant Norton refused to order the Solicitor to issue an arrest warrant so that the Plaintiff could defend against the charge. Up until September 28, 2011, two weeks before trial. defendant  Norton has refused  to require the solicitor to serve on the Plaintiff the required warrant.

¶164.    Plaintiff was entitled to a warrant to explain the charge against him.

-38-

¶165.    Plaintiff' was denied his rights to notice of the charges pursuant to the 6th Amendment to the U.S. Constitution, and Section 10 of the South Carolina Constitution.

¶166.    South  Carolina law, SECTION 56-7-10 provides that  police are not authorized to arrest or even charge defendants for breach of the peace on a traffic citation, even if the cop has viewed the commission of the offense by the defendant.  State law implicates the 14th Amendment.

¶167.    Police need a warrant to arrest for breach of peace.

¶168.    A blue ticket is not a valid charging document for breach of peace.

¶169.    The Plaintiff has no legal recourse, and defendant Matthew Craig is in no way legally responsible for the false statement of fact, because there is no oath or affirmation on the Uniform Traffic Citation which is a violation of Plaintiff's rights under the  6th  and 14th Amendments to the U.S Constitution.

¶170.    Defendant Mitch  Craig is prohibited by South Carolina  law from issuing a citation for breach of peace on a Uniform Traffic Citation.

¶171.    That use of the uniform traffic citation to arrest and charge violates 6th Amendment rights will be proved at trial.

¶172.    As a direct and proximate result of the violation of his constitutional right to have notice and explanation of the charges against him, Plaintiff suffered serious personal injuries and special damages and is entitled to relief under 42 U.S.C. §1983.

## COUNT 3

Violation of Civil Rights Pursuant to Title 42 U.S.C §1983
(Failure to Implement Appropriate Policies, Customs and Practices)

¶173.    Plaintiff re-alleges and incorporates herein by reference the allegations set forth in this complaint¶¶31-149.

¶174.    Defendant Singleton, as sheriff of Oconee County and Defendant Scott Moulder,  as administrator of Oconee County, implicitly or explicitly adopted  by omission or commission and implemented careless and reckless policies, customs or practices, that

-40-

included allowing employees of the Oconee County sheriff's department to confront members of the public who were exercising their 1st Amendment rights, and allowed such employees to employ Oconee County and sheriff's department policies when such employees were mistrained in such subjects as free speech and free press, the right to be irreligious, and the law thereof or obscenity law, when, in fact such employees were prohibited by statute from exercising their judgment, as the South Carolina legislature implied that cops required oversight by the Solicitor. It was the sheriff of Oconee county who recommended the use of the obscenity statute to "disarm and remove the Plaintiff from the street."

¶175.    The failure of Defendants James Singleton, Oconee County, and Scott Moulder to adequately train and supervise the defendants, Craig, Jenkins, unidentified sheriff's deputy amounts to deliberate indifference to the rights of the Plaintiff to free speech and free pressand the right to be irreligious, and to be free from excessive force and unreasonable searches and seizures under the 1st, 4th, 5th, 6th and 14th Amendments to the Constitution of the United States, and similar Amendments to the South Carolina Constitution and laws of South Carolina..

-41-

¶176.    As a result of the aforementioned deliberate indifference to the Plaintiff's rights,  such indifference  not being  within the scope of the defendants's official duties, and such acts of the defendants constitute actual fraud, actual malice, intent to harm  and are a crime of moral turpitude, Plaintiff suffered irretrievable losses of his rights to free speech and free press, personal injuries, and loss of other rights, and is entitled to relief under 42 U.S.C. §1983.

## COUNT 4
Violation of Civil Rights Pursuant to Title 42 U.S.C §1983
(vVolation of 4th Amendment rights by use of Excessive Force)

¶177.    Plaintiff re-alleges and incorporates herein by reference the allegations set forth in  this complaint in ¶¶31-149.

¶178.    The Defendants, Oconee County, Scott Moulder and James Singleton, have adopted policies, procedures, practices of customs within the Oconee County sheriff's office and Oconee County jail, that allow among other things, the use of unnecessary excessive force against arrestees and  jail house prisoners.

¶179.    The actions of the Defendants, Oconee County, Scott Moulder and James Singleton and failure of Defendants Singleton and Moulder, to properly supervise jail house guards and sheriff's deputies amounts to deliberate indifference to the rights of the Plaintiff to be free of excessive force and unreasonable search and seizure under the 1st, 4th, 5th and 14th Amendments to the Constitution of the United States.

¶180.    As a result of the deliberate indifference, and which was not within the scope of their official duties, and which acts constituted actual fraud, actual malice, intent to harm  and were a crime involving moral turpitude,   to the to the Plaintiffs rights by Defendants Scott Moulder, James Singleton, and the actions of agents, servants and employees of Oconee County,   the Plaintiff suffered personal injury; and therefore the Plaintiff is entitled to relief under 42 U.S.C. §1983.

### COUNT 5
### South Carolina Common Law
### (Civil Conspiracy)

¶181.    Plaintiff re-alleges and incorporates herein by reference the allegations set forth this complaint in ¶¶31-149.

-43-

¶182.    On information and belief, Defendant, Jenkins, fully intended to charge the Plaintiff with breach of peace, when the Defendants arrested the Plaintiff without probable cause, on November 8, 2010.

¶183.    When Defendant Singleton read the Plaintiff's writings about violent defense of constitutional rights, which writing are protected by United States    Supreme Court decisions,    Defendant Singleton, upon information and belief, after consultation  and agreement with the Defendant Adams, and Defendant Norton,  conceived the goal of disarming and silencing  and denying the Plaintiff his right to free press and free speech to the Plaintiff by falsely charging the Plaintiff with the felony of disseminating obscenity.

¶184.    On information and belief, Plaintiff avers that all employees  in the sheriff's department knew enough about South Carolina law to understand obscenity. So the Solicitor conferred with the defendant Sheriff, Craig and Jenkins as to how to frame the warrant affidavit and frame the Plaintiff. This malicious and mendacious  scheme of the Defendant Singleton comported with the urgings of the Horace Craig who also wanted the Plaintiff silenced for  using the 'f' word.

-44-

¶185.     The felony charge made it illegal under federal and state law for the Plaintiff to possess a gun, or even to possess a single grain of gunpowder.

¶186.     Upon information and belief, Defendant Singleton planned to raid the Plaintiff's house in the early morning hours to seize the Plaintiff's firearms and to charge the Plaintiff with violations of state and firearm laws that carry penalties of 20 years imprisonment and fines of $100,000.00.

¶187.     In fact, the Defendants did visit the Plaintiff's residence to ask his wife if the Plaintiff was a member of a subversive or terroristic gang. Said visit terrified the Plaintiff's wife.

¶188.     Defendant Singleton communicated his plan to disarm and silence the Plaintiff to Defendant Norton through his underlings Defendants deputy Matthew Craig and Jenkins and unidentified deputy, by ordering said Defendants to apply to Defendant Norton for an arrest warrant that Defendants had no legal authority for which to apply.

¶189.     Defendant Norton had no authority to issue the invalid warrant as Defendant Norton's knew a solicitor had not requested

-45-

the warrant and such issuance violated the due process rights of the Plaintiff

¶190. On information and belief, Defendant Adams, in conspiracy with Defendant Norton and Defendant Singleton, in furtherance of the civil conspiracy, advised that any warrant issued without the Solicitor's request would be null and void legally.

¶192. On information and belief Defendant Adams stated to the Defendant that she would not legally resist the null and void warrant and that she would deny the Plaintiff a preliminary hearing.

¶193. Defendant Adams knew the Plaintiff was entitled to such a hearing within 10 days of Plaintiff's request for a preliminary hearing.

¶194. Defendant Adams and Defendant Simmons would cooperate with the other Defendants in denying the Plaintiff his rights, and to silence and disarm the Plaintiff such as denying the Plaintiff his right to a preliminary hearing.

¶195. On information and belief, all of the Defendants believe that God commanded mankind not to use the 'f' word and the

-46-

Defendants intended to punish the Plaintiff for use of the 'f' word and to disarm the Plaintiff for asserting the theory of a violent defense of constitutional rights.

¶196. Additionally, Defendant Singleton stated to the Plaintiff that when Defendant Singleton read Plaintiff's theory of a violent defense of constitutional rights, which theory was, and is, protected by the 1st Amendment, Defendant Singleton seized the notion that his deputies were threatened by the Plaintiff, and that Defendant sheriff "had to do anything to stop that threat," including illegally charging, disarming, and jailing and silencing the Plaintiff. These were the words Defendant Singleton said to the Plaintiff.

¶197. On information and belief, all of the Defendants fanatically believe that they can oppress anyone and deny anyone their rights if the exercise of those rights conflicts with the alleged word of god and supposed biblical admonishments against the 'f' word.

¶198. Defendant The Journal made a one-sided report from the side of the Defendants of Plaintiff's arrest and further reported that Defendant Singleton had been informed both by the defendant solicitor and by the Walhalla, South Carolina, Chief of Police, Tim Chastain

that the Plaintiff had broken no law and was exercising his free speech rights.

¶199.    On information and belief, such was intensity of Defendant Singleton's desire to harm the Plaintiff illegally that he ignored peer and legal advice from the solicitor and the Walhalla chief that the Plaintiff was merely exercising his rights, by displaying his posters, suborned the cooperation of the solicitor and the illegal cooperation of magistrate judge Norton. Also, defendant Singleton feels sorry for himself and has scads of self-pity because defendant Singleton is a Viet Nam vet and feels his contributions go un-noticed and he detests anyone who criticizes the U.S. government because he wants the U.S. government to recognize his contributions to the war effort. This is the result of a conversation the Plaintiff had with defendant Singleton when the Plaintiff spoke to defendant Singleton about getting his little Taurus .25 back. Plaintiff sincerely believes defendant Singleton is a mental case.

¶200.    Upon information and belief, when defendant assistant solicitor Simmons was assigned the case and obtained a copy of the warrant, Defendant Simmons had to know, and did know, that the warrant and charges thereon were entirely bogus and Defendant Simmons

-48-

knew that the Plaintiff had not committed the crime he was charged with committing and the warrant did not establish probable cause to arrest or search the Plaintiff, or incarcerate the Plaintiff.

¶201.    On information and belief, Defendant Simmons is married to the Chief Magistrate of Oconee County and thus the offices of the solicitor and magistrates and sheriff are in their own way, wedded, and very cooperative with each other and if a magistrates issues an illegal warrant at the behest of a conniving and conspiring Defendant sheriff Singleton, the solicitor would not complain or undo the magistrate's illegal acts, and if a solicitor officially encounters an illegal warrant, the magistrates office is sure to cooperate and bypass the illegal warrant on a friendly cooperative basis of fighting bad words and keeping the County of Oconee pure. And, if a solicitor encountered an illegal arrest by the police, the solicitor would be sure to cover it up and not criticize the police.

¶202.    Upon information and belief, when Defendant assistant solicitor brought the fact of a void warrant to Defendant Adam's attention, Defendant Adams told Defendant Simmons to accede to

Defendant Singleton and Defendant Norton's plan to silence and disarm the Plaintiff and not vacate the arrest warrant.

¶203.     Defendant Simmons did in fact   join in and cooperate in   the civil conspiracy initiated by Defendants Singleton, Norton, Jenkins, Matthew Craig, Horace Craig, Adams and unidentified deputy #1, thereby causing the Plaintiff to dangle like a fish on a hook till the preliminary hearing in trembling fear of his fate.

¶204.     After the felony charge was dismissed, Plaintiff was immediately arrested by Defendant Mitch Craig on an undefined charge of breach of peace initiated by the solicitor who  was not a witness, The facts supporting a charge of breach of peace are not included in defendant Mitch Craig's incident report.

¶205.     Defendant Simmons could have moved the Magistrate on November 10th 2010 to void the arrest warrant  and release the Plaintiff from bond, but she did not do so.

¶206.     Upon information and belief, Defendant  Adams stated to Defendant  Simmons that the Plaintiff had received "what was coming to him in the jailhouse,"  in reference to the severe beating the

Plaintiff had received at the hands of unidentified deputy , Defendants Jenkins and Matthew Craig and the jail house guards.

¶207.    Defendants Adams, Simmons, Singleton, Norton, Matthew Craig, Jenkins and unidentified deputy met, and defendant Horace Craig schemed, planned , connived, conspired and put together an agenda to purposely harm the Plaintiff and cause him to be deprived of his rights to free speech and to free press, and to criticized Israel.

¶208.    Defendants Adams, Simmons, Singleton, Norton, Craig, Jenkins and unidentified deputy acted outside the scope of their employment and with the intent to harm the Plaintiff and acted with actual malice, acted with actual fraud, and whose acts involved a crime of moral turpitude

¶209.    The invalid arrest warrant had been issued at the malicious insistence of Defendant Singleton who wanted the Plaintiff arrested, disarmed, and silenced and denied his First Amendment rights, as Defendant Singleton stated to Defendants Moore and Sibley.

¶210.    The malicious conspiratorial plan of Defendant Singleton was entered into by Defendants Craig, Jenkins, Norton, unidentified sheriff's deputy, Adams, Horace Craig, and Simmons.

¶211.     The plan was conceived and led by defendant Singleton, at the initial instigation of the defendant Horace Craig.

¶212.     Defendant Blake Norton issued the arrest warrant that was   illegal because a solicitor had not requested the warrant's issuance.

¶213.     Defendant Norton issued the bogus arrest warrant because his superior, the chief magistrate, is married  to a assistant  solicitor, and the Defendant solicitor and the Defendant sheriff were involved in a conspiracy to harm the plaintiff, and on information and belief, Defendant Norton believed his wrong doing would not be the subject of legal action because of the close relationship between the magistrate's, solicitor's and sheriff's office.

¶214.     Defendant Blake Norton issued the arrest warrant when defendant Norton had no subject matter jurisdiction or personal jurisdiction to issue the arrest warrant, at the behest and request of Defendant Singleton.

¶215.     Defendants Norton and defendant Singleton knew Defendant Norton had no jurisdiction to issue the warrant.

¶216.    Defendant Norton did not have subject matter jurisdiction over a warrant for dissemination of obscenity unless the warrant is requested by a solicitor. Even the, the warrant did not state probable cause to arrest and incarcerate the Plaintiff

¶217.    Defendant, Lindsay Simmons, assistant solicitor, had to know that the warrant was invalid, and that the warrant did not accuse the Plaintiff of a crime, and was void for lack or probable cause and was issued by Defendant Norton without subject matter jurisdiction because it had not been requested by a solicitor.

¶218.    Defendant Simmons stated to the Plaintiff after the obscenity warrant was    that "Only solicitor Adams has the  right to decide what is obscenity and what is not obscenity in Oconee County."

¶219.    The fact that Defendants Adams and Simmons knew that the warrant lacked probable cause and subject matter jurisdiction proves that Defendants' malice toward the Plaintiff stopped Defendants from having the warrant recalled and made null and void.

¶220.    Defendant Adams,  knew, and had to know, that the arrest warrant  was invalid because it was issued by Defendant Norton, who was without jurisdiction to issue such a warrant,  when it had

not been requested by the solicitor (defendant Adams is the only authority in Oconee County that can legally request an arrest or search warrant for an obscenity charge.

¶221.     Defendant Adams did not intervene to have the arrest warrant withdrawn and vacated as Defendant Adams should have known, and did know, that the Plaintiff had not committed a crime by displaying a sign that said "fuck Israel," and Defendants Adams and Simmons had the authority to intervene.

¶222.     Thereby, Defendants Adams and Simmons defamed the Plaintiff.

¶223.     As a result of the illegal actions of all the defendants, the Plaintiff lost the treasured rights of free press, free speech and the ability to own and operate firearms, and lost his right to a concealed weapons permit, forever, and had his reputation damaged by Defendant sheriff  false explicit or implied statements to the press.

¶224.     In committing the acts complained of herein, Defendants Singleton, Craig, Jenkins, unidentified sheriff's deputy, Adams and Simmons, and Weaver,  acted under color of state law by arresting, searching, and jailing the Plaintiff with no basis in law or fact to do so.

¶225.    The arrest warrant, served on the Plaintiff, did not accuse the Plaintiff of a crime, did not state probable cause to arrest or search and was invalid because the warrant was not requested by a solicitor as was required by statute, and had been issued outside the jurisdiction of the Magistrate.

¶226.    Magistrate  Norton  lacked  subject  matter jurisdiction to issue the warrant.

¶227.    Defendant Weaver, under color of    state law, conspired with other Defendants to deprive the Plaintiff of a preliminary hearing for over two months, thereby virtually incarcerating the Plaintiff.

### COUNT 6
South Carolina Common Law
(Malicious Prosecution)

¶228.    Plaintiff re-alleges and incorporates herein by reference the allegations set forth in this complaint in ¶¶ 31-149.

¶229.    Defendants Singleton, Adams, Simmons, Mitch Craig, Norton, and Horace Craig instituted and preferred criminal charges and continued criminal action against the Plaintiff by denying the Plaintiff his right to a preliminary hearing, and by not withdrawing the invalid warrant for over two months,  which action was terminated in favor of

the    Plaintiff    for    reasons    that    indicated    the    Plaintiff's
innocence,(insufficient evidence) for which action there was no probable
cause, resulting in Plaintiff's loss and damage, economic and non-
economic.

¶230.    Malice is inferred from the lack of probable
cause.  None of the elements of the crime of dissemination of obscenity
are even mentioned on the illegal warrant. Malice, further,  is inferred from
the absence of a solicitor's request for the issuance of an arrest warrant
for dissemination of obscenity, and for denial of the Plaintiff his right to a
preliminary hearing., and malice is inferred from the fact that the solicitor
did nothing to quash the invalid warrant.

¶231.    Malice is inferred from the failure of the
Defendants to pursue the action to a preliminary hearing, and allow a
judicial determination of the charge, which would show the malicious
nature of the false obscenity charge and would have caused the charge to
be expunged from the Plaintiff's criminal record.

¶232.    The circumstances and conditions of the *nolle
prosequi* indicate the innocence of the Plaintiff of the charge of
distribution of obscenity was the real reason for the *nolle prosequi* and

-56-

thus an action for malicious prosecution may be maintained in the instant case.

¶233.    Defendants themselves admit to their malice and thereby lack of probable cause in bringing felony charges against the Plaintiff by dismissal of the felony charge prior to a preliminary hearing. In South Carolina law, "insufficient evidence to convict' is not grounds to *nolle prosequi*. If the state presents sufficient evidence to establish probable cause, a defendant may be bound over for trial. The defendants didn't have probable cause; they had nothing. After all, if there "is insufficient evidence to convict", there is a high probability that the Plaintiff was innocent in the first place. If the defendants had probable cause, they most likely could have extracted a guilty plea and a plea agreement out of the Plaintiff.

## COUNT 7
### South Carolina Common Law
### (Abuse of Process)

¶234.    Plaintiff re-alleges and incorporates herein by reference the allegations set forth in this complaint in ¶¶ 31-149.

Defendants, Singleton, Adam, Matthew Craig, Simmons, Norton, including Horace Craig, procured the issuance of, and issued, an invalid felony warrant with the ulterior motive of illegally silencing and disarming the Plaintiff, an illegitimate objective of an invalid arrest warrant. Defendants willfully did not obtain a solicitor's request for the invalid arrest warrant, when they were required by statute to do so. Defendants were not authorized by South Carolina law to apply for a obscenity warrant without the request of a solicitor. The ulterior purpose of obtaining the illegal warrant is shown by the *nolle prosequi* of the warrant on the solicitor's motion.

¶235.    As a result of the intentional overt acts of the defendants, Plaintiff experienced embarrassment and humiliation when his arrest was reported in the press. Plaintiff is entitled to relief under U.S.C. 42 ¶1983.

COUNT 8
South Carolina Common Law
(Intentional Infliction of Emotional Distress)

¶236.    Plaintiff re-alleges and incorporates herein by reference the allegations set forth in this complaint in ¶¶ 31-149. In

-58-

procuring and issuing an invalid felony warrant, and in allowing the invalid warrant to stand until a long denied preliminary hearing, and in illegally incarcerating    the Plaintiff, the Defendants Singleton, Craig, Adams, Horace Craig, Norton, and Simmons, intentionally or recklessly inflicted severe emotional distress, or Defendants were certain, or substantially certain, that such distress would result from the Defendant's conduct.

¶237.    In procuring and issuing an invalid felony warrant, and in allowing the invalid warrant to stand until time for a preliminary hearing, and in illegally incarcerating the Plaintiff, and denying and punishing the Plaintiff for exercising his rights of free speech and free press, and a right to be free of religion,  the conduct of the defendants was so extreme and outrageous so as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community.

¶238.    The actions of  the defendants caused Plaintiff's extreme emotional distress.

¶239.    The emotional distress suffered by the Plaintiff was so severe that no reasonable man could be expected to endure it.

The Plaintiff continues to suffer severe emotional distress as the felony charge and its ultimate consequences continues unabated.

¶240.    The Plaintiff's wife is a law abiding citizen and the daughter of a New York City police officer of over 40 years service. When the Plaintiff came home from jail, his wife immediately stated that if he was convicted of the felony, he had to leave as she would not live with or be married to a felon.

¶241.    Currently, Plaintiff's wife doesn't hesitate to remind the Plaintiff that he hasn't been cleared of a felony charge even though the felony charge has been *nolle prosed*, and the Plaintiff's marriage has been negatively affected by the actions of the Defendants. Plaintiff's wife is a cop's daughter.

## COUNT 9
South Carolina Common Law
(Slander and Libel)

¶242.    Plaintiff re-alleges and incorporates herein by reference the allegations set forth in this complaint in ¶¶ 31-149.

Defendant Singleton said falsely of and about the Plaintiff that the Plaintiff had "no business" carrying a gun, meaning that the Plaintiff was a criminal as felons are barred from carrying guns

¶243.     Defendant Singleton said falsely of and about the Plaintiff that the Plaintiff disseminated obscenity and that "that type of obscenity is not protected by the Supreme Court. We think we can make a strong case out of this," meaning that the Plaintiff had perpetrated the crime of disseminating obscenity, nor was there any public record that accused or supported an accusation of the Plaintiff disseminating obscenity.

¶244.     Defendant Singleton said falsely of and about the Plaintiff that "We got him disarmed and off the street," meaning that the Plaintiff was a criminal and did not belong armed and on the street, and that the defendant had disarmed the Plaintiff by defamation.

¶245.     Defendant Singleton said falsely of and about the Plaintiff "He had material on him about killing cops and that if state or local cops tried to disarm him, he'd have the right to kill them," implying that the Plaintiff was a killer. Having such material was not a violation of law and possession and creation thereof was constitutionally protected.

¶246.    Plaintiff was never charged with having "material on him about killing cops  and that if state or local cops tried to disarm him, he'd have the right to  kill them."

¶247.    Defendant Singleton published the   false and defamatory words to a  third party.

¶248.    Defendant Singleton published the false and defamatory words without justification or privilege and during a news conference.

¶249.    Defendant Singleton's false and defamatory words accused the Plaintiff of a crime, which the Plaintiff had  not and did not perpetrate and for which he was not charged.

¶250.    Defendant Singleton published the false and defamatory words with constitutional and common-law malice toward the Plaintiff.

¶251.    Defendant Singleton published his remarks without justification to defendants, The Journal, Andrew Sullivan and Jessica Sibley, who are reporters  for The Journal, a hometown newspaper

located in Seneca, South Carolina. The Journal has a mass circulation of 8,000 in throughout Oconee County.

¶252.    Defendants, Oconee Publishing, The Edwards Group, Michael Leonard, Steve Edwards Sullivan, Sibley and The Journal republished the false and defamatory words of Defendant Singleton when Defendant Singleton's false and defamatory statements were not part of any official report or document.

¶253.    In fact, the Plaintiff's writings that defendant Singleton referred to in his false and defamatory statements of the Plaintiff are not even mentioned in the official Incident report and are not mentioned in the invalid arrest warrant affidavit or incident report made by defendant Mitch Craig, and the writings were not know about before the illegal arrest of the Plaintiff. Defendant Singleton had to know and did know that his defamatory words were false as he tried to hide his illegal search of the Plaintiff's writings behind a post-arrest discovery of alleged illegal writings.

¶254.    Defendants, Oconee Publishing, The Edwards Group, Michael Leonard, Steve Edwards Sullivan, Sibley and The Journal are not entitled to the privilege of fair report,

-63-

¶255.    Defendant Singleton  was not referring to any public records as the Plaintiff was not arrested for his writings on a violent defense of 2nd Amendment Rights, which writings are constitutionally protected.

¶256.    Defendants, Oconee Publishing, The Edwards Group,  Michael Leonard, Steve Edwards Sullivan, Sibley and The Journal had knowledge that the statements of Defendant Singleton were false, and published those statements with reckless disregard of whether the statements of the Defendant were false or not.

¶257.    Defendants, Oconee Publishing, The Edwards Group,  Michael Leonard, Steve Edwards Sullivan, Sibley and The Journal were without privilege or justification to published said statements.

¶258.    Defendants, Oconee Publishing, The Edwards Group,  Michael Leonard, Steve Edwards, Sullivan, Sibley and The Journal were aware that the statements were made with knowledge of their falsity or with reckless disregard of whether they are true or false.

COUNT 10
Declaration of Rights  pursuant  to 28 U.S.C. §§2201 and 2202
(Federal Question §1331)

-64-

¶259.    Plaintiff re-alleges and incorporates herein by reference the allegations set forth in this complaint in ¶¶ 31-149. The employment of a South Carolina  Uniform Traffic Citation to effect a custodial arrest, and search and to charge a violates 4th and 6th Amendments to the U.S. Constitution requirements.

¶260.    There is no requirement of an oath or affirmation on a Uniform traffic citation and a  uniform traffic citation is insufficient authority for a search, even a search incident to arrest.

¶261.    There is no description of the offense beyond a cursory statement as to the name of the law allegedly violated. Invariably, the uniform traffic citation is used as the charging document at trial, and the result is that  the defendant at such a trial is not been given notice of the actual charge against which he must defend, and the state is able to ambush the defendant at  trial  and not  even actually define the charge the defendant must defend against, find the guilty and assess a fine that benefits the state and local regimes.

¶262.    There is no requirement of a statement as to how the arresting officer knew the offense occurred and that the arrestee committed the offense. Such was the case in the uniform traffic citation

by which the Plaintiff was arrested. There was no statement of material fact which supported the officer's charge.

¶263.    South Carolina statute and case law prohibits use of a uniform traffic citation to arrest and charge for breach of peace and prohibits its use as a trial charging document or instrument.

¶264.    Magistrates and municipal judges who hear at trial a great many cases in which a uniform traffic citation is the arresting and charging document do nothing to protect the defendant's constitutional 6th amendment rights. Rather judges and magistrates and solicitors take advantage of the paucity of information on the ticket for the defendant to ambush defendants at trial.

¶265.    Use of the uniform traffic citation violates the constitutional rights of defendants, and violated the constitutional rights of the Plaintiff.

COUNT 11
(Unconstitutional search and seizure in violation of the 4th Amendment)

¶266.     Somewhere around October 20, 2010, Plaintiff was displaying a political sign in Walhalla, South Carolina when he was approached by Defendant Paul Harris, a Walhalla, SC police officer.

¶267.     Defendant Harris is a large, heavy man, with a threatening mein and with his body pushed the Plaintiff away from a tree the Plaintiff was leaning on and forced the Plaintiff down a slight incline in the median down to the street gutter.

¶268.     Defendant Harris reached out to the Plaintiff and seized the Plaintiff's adam's apple between his fingers, and said to the Plaintiff ,"You are a slimy scumbag for cussing Israel. I'd like to kill you right now. Get back up here fuckface and do a felony lean against your tree."

¶269.     Plaintiff did a felony lean against the tree.

¶270.     Defendant Harris proceeded to search the pockets of the Plaintiff, pulling out of the pockets and throwing to the ground a tear gas dispenser, a wallet, a .32 Harrington & Richardson double action chrome plated revolver with custom grips and 24 cartridges.

¶271.    Defendant Harris did a through search of the Plaintiff.

¶272.    Defendant Harris made a prolonged and through search of the deeply embarrassing and humiliating the Plaintiff, as others were watching and grinning and laughing at each other and at Defendant Harris, among whom were chief Chastain, officer Matthews and another Walhalla cop and the Walhalla town administrator.

¶273.    Then, Defendant Harris stated to the Plaintiff that 'Walhalla was a god-fearing bible town and no scumbag like the Plaintiff was going to change that. If he showed those signs again Defendant Harris would put the Plaintiff under the jail and beat the living shit out of the Plaintiff. Now get out of here.'

¶274.    Plaintiff was prohibited by Defendant Harris from retrieving his personal property that was on the ground. Chief Chastain came over and picked up Plaintiff's little .32, a pretty little gun, and he put it in his pocket.

<u>COUNT 12</u>
(Denial of access to the courts, 1st Amendment)

¶275.	Plaintiff re-alleges and incorporates herein by reference the allegations set forth in this complaint in ¶¶ 31-149. On a certain date, the Plaintiff attempted to file a claim and delivery case against defendant sheriff for property of the Plaintiff's held by the Oconee County sheriff.

¶276.	The filing was refused by defendant Norton and by defendant Vickie Weaver on the grounds that the magistrate judge in South Carolina has no jurisdiction over cases wherein the state is a party. But, the State was not a party. The Plaintiff herein and the Sheriff were the parties.

¶277.	On the same date, Plaintiff attempted to file a petition for a writ of mandamus with Oconee County Clerk Beverly Whitfield.

¶278.	Defendant Whitfield refused to accept the above referenced petition for filing on the grounds that "the lord doesn't allow his sheep to attack a government official because god has approved of the government and god gives them power they have."

¶279.    Subsequently, after about 15 minutes, defendant Whitfield told the Plaintiff that he could file the petition for writ of mandamus for $150 filing fee but nothing would be done by the clerk's office in connection with the petition.

¶280.    When defendant Whitfield told the Plaintiff he could file for $150, she had called the cops, and as the defendant told the Plaintiff about filing, a huge, red-headed Oconee County cop was next to the Plaintiff.

¶281.    At the conclusion of the defendant's statement to the Plaintiff, the Oconee County grabbed the Plaintiff by the nape of the neck and squeezed real hard, almost bringing the Plaintiff to his knees, and the cop half drew his gun and pointed it at the rib cage of the plaintiff and forcibly pushed the Plaintiff out of the courthouse.

¶282.    The defendant  Whitfield remarked, "Praise and bless  the lord," as she viewed the Plaintiff being kicked out of the court house by the Oconee County cop.

¶283.    Such denials of the right to file a case by defendants Norton, Weaver, and Whitfield constitute violations of 14th Amendment rights of the Plaintiff, i.e. rights  to equal protection of the

-70-

law and rights to due process and equal protection and 1st amendment to be free of religion. Defendants wanted to force their religion on the Plaintiff.

¶284.    Because the defendants Weaver and Whitfield have denied the Plaintiff his rights, the Plaintiff is entitled to relief under 42 U.S.C. §§1983 and 1988.

## COUNT 13
South Carolina Common Law
(Slander and Libel)

¶285.    Upon information and belief, defendant Jenkens slandered the plaintiff in his report to SLED about why the Plaintiff's concealed weapons permit should be revoked. The nature and words of the defamation must await discovery. But a claim is here asserted against defendant Jenkins for defamation be it slander or libel.

WHEREFORE, the Plaintiff demands the following judgment against the Defendants:

James Singleton.............................................$11,000,000.00;

Oconee County...............................................$22,000,000.00;

Steve Jenkins.................................................$12,000,000.00;

Mitch Craig....................................................$12,000,000.00;

Crissy Adams.......................................... ......$5,000,000.00;

Lindsay Simmons.............................................$5,000,000.00;

THE JOURNAL..................................................$10,500,000.00

Vickie Weaver    ..........................................  $3,500,000.00;

Brad Norton...................................................... $7,000,000.00;

Horace Craig...................................................$10,000,000,00;

Beverly Whitfield............................................. $5,000,000.00;

Andrew Sullivan................................................$5,000,000,00;

Jessica Silbey................................................ $5,000,000.00;

Michael Leonard.................................................$6,000,000.00;

Paul Harris.......................................................$10,000,000.00;

Steve Edwards.................................................$10,000,000.00;

Scott Moulder..................................................$15,000,000.00;

Oconee Publishing............................................$10,000,000;

The Edwards Group.........................................$20,000,000.00;

Further:

1.    That a FEDERAL court order issue vacating and voiding the invalid arrest warrant  employed by Oconee County to arrest the Plaintiff on the obscenity charge.

2.    That Plaintiff be awarded those damages to which it may appear he is entitled by the proof submitted in this case for his physical and mental

pain and suffering, embarrassment and humiliation, both past and future; permanent injury and disability; loss of enjoyment of life; and medical and psychological damages both past and future.

3.   The issuance of an Order and Permanent Injunction that:

4.   appoints an independent monitor to oversee Oconee County Sheriff's Department, Oconee County Magistrates, and Oconee County Solicitor for 15 years and that reports to the verbally and in writing to the Court on a monthly basis;

5.   authorizes the monitor to establish, review and enforce all policies applicable to the management of the Oconee County Sheriff's Department, county solicitor, and Oconee magistrate ; that the aforesaid monitor shall have powers of contempt and subpoena and arrest; and shall have powers to fine the subject departments and individual members of the afore mentioned departments and agencies;

6.   provides the monitor with authority to hire, fire, and promote and demote and hold out of service pending investigation with out or with pay all Oconee County Sheriff's Department and to prohibit the sheriff, without monitor approval, from performing any function related to the Oconee County Sheriff's Department;

7.      establishes an independent citizen Police Review Committee, a independent citizen Solicitor Review Committee and    a independent citizen Magistrate Review Committee, each composed of three members selected by the Court, which shall review  and publicly hear complaints of misconduct against Oconee County Sheriff's Department, Walhalla Police Department, Oconee County Solicitor and Oconee County  Magistrates, and makes recommendations to the Monitor as to discipline or innocence, and who, in appropriate cases,  makes recommendation to the South Carolina Bar Association, and the South Carolina Supreme Court, as to innocence or punishment of solicitors and magistrates; said citizen Police Review board, citizen solicitor review board, said magistrate  and review board shall have powers to punish contempt and power of subpoena;

8.      orders that the Oconee County Sheriff's Department provide proper training, including written and oral tests, based on materials and plans approved by the Monitor, to all current and new personnel on the following matters:

    a.      the appropriate chain of command in criminal investigations;

    b.      proper issuance of public statements relating to criminal investigations;

      c.     writing and evidence standards for police reports and warrant affidavits;

      d.     the standards for probable cause.

      e.     constitutional rights

      f.     proper use of the Uniform Traffic Citation

9.     that enjoins the Oconee County Sheriff's Department from delegating any supervision over a Oconee County Sheriff's Department investigation to the Oconee County Solicitor's Office; and that enjoins the solicitor, or any assistant solicitor, from assuming authority over the Oconee County Sheriff's Office and ordering deputies to write uniform traffic citations.

10.    that orders Oconee County to provide proper training to magistrates, and to solicitors and assistant solicitors, including written and oral tests and essays that become part of the individual's personnel record, and that can be recalled as evidence against accused and offending personnel by the monitor, to all current and new personnel on the following matters:

      a.     Constitutional rights;

-76-

b.    limitations of the use of Uniform Traffic citation;

c.    requires the solicitor at trial to advocate for the constitutional rights of defendants;

d.    standards for probable cause;

11.    that requires that those affected by this order shall be made to pay for its implementation by appropriate reductions in salaries; to wit, that the cost of implementing this order shall be pro-rated among the offending personnel but that the sheriff him self shall be made to pay an extra 50% which shall be put into a fund to reimburse those who have been abused by the sheriff's department;

12.    that no payment by personnel  to implement this order be tax deductable;

13.    that the sheriff in particular be instructed by the Monitor how to make public statements about  ongoing investigations that do not prejudice the rights of defendants;

14.    that requires Oconee County to go back in their records for the past twenty-five years and identify and locate defendants who were unconstitutionally convicted by use of  a uniform traffic citation, and to

return any related fines and penalties, with interest, said returns to be paid from the salaries of current personnel of Walhalla Police Department, Oconee County Sheriff's Department. Oconee County Magistrates, and Oconee County Solicitors;

15.    that this Order and Permanent Injunction be made applicable to any arrestee and    political subdivision of the State of South Carolina, anywhere in the State of South Carolina, in any county and any municipality or city, of south Carolina, arrested by use of the uniform traffic citation, upon motion of such arrestee to this Court:

16.    that where former defendants cannot be located, but the fines and penalties paid by such defendants are known, that the amount paid by the defendants be paid as a charitable contribution to  the AFL-CIO or Planned Parenthood to prevent county and municipality unjust enrichment and to require the disgorgement of such ill-gotten gains.

17.    an Order and Injunction declaring South Carolina Law 56-7-10 repugnant to the 4th and 6th Amendments to the United States Constitution, and to enjoin enforcement thereof;

18.    that where the uniform traffic citation   is employed in South Carolina, it carry a stamped message to the recipient that a United States

District Court has determined the citation is constitutionally insufficient to effect a search or/and a seizure, or for a charging document at a trial, and that it is issued for informational purposes only.

19. that the treasurer of the municipality or the county be required to submit evidence as to what percentage of their income if derived from fines and penalties, and if the ratio is greater than 15% the county or municipality be tagged as a speed trap and a corrupt county and that such indication be made on all traffic control devices within the municipality or county, such as _____[municipality] is a speed trap as determined by its income and practice and _____ county is a corrupt county as indicated by its excessive fines and penalties income. The Monitor shall also maintain for public access the names addresses and phone numbers, which shall be available to the public, of all persons who benefit from excessive income form fines and penalties, and the amount of that income;

George T. Lee

George T. Lee
417 Snead Road
Walhalla, SC 29691
864-784-6988