UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| George T. Lee,<br><br>Plaintiff,<br><br>vs.<br><br>James Singleton; Mitch Craig; Crissy Adams; County of Oconee; Steve Jenkins; Lindsay Simmons; Blake Norton; Scott Moulder; Unidentified Oconee County Deputy; Connie Weaver; The Journal; Oconee Publishing; The Edwards Group; Andrew Sullivan; Jessica Sibley; Michael Leonard; Beverly Whitfield; Horace Craig; Paul Harris; Steve Edwards,<br><br>Defendants.<br>_____ | ) C/A: 8:11-2983-JMC-KFM<br>)<br>)<br>)<br>) **REPORT AND RECOMMENDATION**<br>) *Partial Summary Dismissal*<br>) *and*<br>) *Stay of this Action Pending the*<br>) *Conclusion of Plaintiff's State*<br>) *Court Proceedings*<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

This is a civil action filed by a *pro se* litigant. Plaintiff paid the full $350 filing fee. *See* Receipt No. 600005779 (DSC); ECF No. 1. The case is presently before the undersigned United States Magistrate Judge for report and recommendation following pre-service review pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(e) DSC.

## STANDARD OF REVIEW

Under established local procedure in this judicial district, a careful review has been made of the *pro se* pleadings. Plaintiffs' Complaint is subject to review pursuant to the inherent authority of this Court to ensure that a plaintiff has standing, that subject matter jurisdiction exists, and that a case is not frivolous.[1] *See Fitzgerald v. First East Seventh*

_____

[1] Authority in this district indicates that pre-screening, under 28 U.S.C. § 1915, is inapplicable in *pro se*, non-prisoner, fee-paid cases. *See Bardes v. Magera*, C/A No. 2:08-487-PMD-RSC, 2008 WL 2627134 at *8-10 (D.S.C. June 25, 2008) (finding

*Street Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000). *See also Mallard v. United States District Court for the Southern District of Iowa*, 490 U.S. 296, 307-308 (1989) (mentioning in dicta that "[s]tatutory provisions may simply codify existing rights or powers. Section 1915(d), for example, authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have power to do so even in the absence of this statutory provision").

This Court is required to liberally construe *pro se* complaints. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Such *pro se* complaints are held to a less stringent standard than those drafted by attorneys, *id.*; *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Cruz v. Beto*, 405 U.S. 319 (1972). When a federal court is evaluating a *pro se* complaint, the plaintiff's allegations are assumed to be true. *Erickson*, 551 U.S. at 93 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Nonetheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1953 (2009) (outlining pleading requirements under Rule 8 of the

---

persuasive the Sixth Circuit's opinion in *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999), that § 1915(e)(2) is inapplicable to actions that are not pursued *in forma pauperis*); *Key v. United States Dep't of Transp.*, No. 2:01-CV-3076-18RB (D.S.C. Dec. 7, 2001, Order) (finding that a *pro se* non-prisoner plaintiff has to invoke § 1915 before the pre-screening under § 1915 applies to the case). The undersigned is not conducting an initial review pursuant to 28 U.S.C. § 1915(e)(2) because Plaintiff has paid the filing fee.

2

Federal Rules of Civil Procedure for "all civil actions").  The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so; however, a district court may not rewrite a complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999), construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court, *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## BACKGROUND

Plaintiff,  a citizen and resident of Walhalla, in Oconee County, South Carolina, filed his Complaint in this case on November 2, 2011 (ECF No. 1), alleging that this is an action:

> aris[ing] under the First, Fourth, Fifth, Sixth and Fourteenth Amendments; under federal law, specifically  42 U.S.C. §§ 1983 and 1988; under South Carolina common law for intentional and/or negligent infliction of emotional distress, conversion, loss of companionship, negligence, negligent supervision, gross negligence, assault, excessive force, false arrest, false imprisonment, malicious prosecution, abuse of process, and civil conspiracy, under South Carolina statutes, and for a declaration of unconstitutionality of a South Carolina statute.

ECF No. 1, p. 1-2.  Plaintiff's Complaint also alleges state-law defamation claims.  Plaintiff has filed a notice of constitutional challenge to a South Carolina statute, S.C. Code § 56-7-10, which is set forth in Plaintiff's Complaint as his tenth cause of action.  ECF No. 2.

Plaintiff alleges that he was unlawfully arrested, on November 8, 2010, by Sheriff Singleton, Deputy Jenkins, Deputy M. Craig, and another unidentified deputy, all members of the Oconee County Sheriff's Department ("OCSD"), who were allegedly acting on a tip from Horace Craig, a private citizen, who is the father of M. Craig and whose alleged actions in procuring and assisting in Plaintiff's arrest allegedly constituted state action.

Plaintiff alleges that, while he was peacefully exercising his First and Second Amendment rights, publicly displaying a sign that read "F- - - Israel," while carrying a concealed weapon for which Plaintiff had been issued a permit by SLED, Plaintiff was, without probable cause and with excessive force, subjected to an unlawful search, seizure, and arrest for the dissemination of obscene material.    Plaintiff alleges that the arrest warrant for the obscenity charge, which was authorized by Oconee County Magistrate Norton, was invalid and unlawful because, under S.C. Code § 16-15-435, only a solicitor can request a search or arrest warrant for violation of South Carolina's obscenity law.  Plaintiff alleges that Solicitor Adams and Assistant Solicitor Simmons, after the issuance of the unlawful obscenity arrest warrant, conspired with Sheriff Singleton and other named Defendants to disarm and silence Plaintiff by unlawfully refusing Plaintiff's request for a preliminary hearing in order to keep the invalid felony charge hanging over Plaintiff's head for two months.  Plaintiff alleges that he was forced to sell his gun collection valued at over $78,000 for an amount far below its actual value and that his concealed weapons permit was revoked as a result of his unlawful arrest.  Plaintiff alleges that Adams and Simmons, in furtherance of the conspiracy, dismissed the obscenity charge, depriving Plaintiff of an opportunity to obtain an acquittal that would preclude the charge ever being revived. Instead, Plaintiff alleges that when the charge was dismissed by the 10th Circuit Solicitor's Office, on January 14, 2011,[2] just prior to the scheduled preliminary hearing, Plaintiff was immediately arrested on the charge of breach of peace.  Plaintiff alleges that OCSD

---

[2]The Oconee County Tenth Judicial Circuit Public Index confirms this.  *See* http://publicindex.sccourts.org/oconee/publicindex/CaseDetails.aspx?County=37&Court Agency=37001&Casenum=N137262&CaseType=C (last visited December 27, 2011).

4

Deputy M. Craig issued a uniform traffic citation charging Plaintiff with breach of peace, on November 8, 2010, but the citation falsely stated that Plaintiff's arrest on the charge was made on November 8, 2010, not on January 14, 2011.  Plaintiff further alleges that S.C. Code § 56-7-10 does not authorize the use of a uniform traffic citation to effect an arrest for the crime of breach of peace.  Plaintiff further alleges that S.C. Code § 56-7-10 is unconstitutional, and that its application in his criminal case violated his rights.

Plaintiff alleges that Singleton and Moulder, by commission and omission, implicitly or explicitly, adopted careless and reckless policies, customs, and practices that resulted in violation of Plaintiff's 1st Amendment rights and that Singleton's and Moulder's failure to adequately train and supervise OCSD personnel resulted in violation of Plaintiff's 1st, 4th, 5th, 6th, and 14th Amendment rights.  ECF No. 1, p. 40-41.  Plaintiff alleges that Oconee County, Singleton, and Moulder have adopted policies "allow[ing] the use of unnecessary excessive force against arrestees and jail house prisoners," which resulted in Plaintiff's personal injury.  ECF No. 1, p. 42-43.  Plaintiff alleges that after Singleton, Adams, and Norton conspired to falsely charge Plaintiff with a felony obscenity charge on November 8, 2010, Singleton thereafter "planned to raid the Plaintiff's house in the early morning hours to seize the Plaintiff's firearms and to charge the Plaintiff with violations of state and federal laws that carry penalties of 20 years imprisonment and fines of $100,000.00."  ECF No. 1, p. 44-45.  Plaintiff alleges that Singleton, Adams, Norton, Simmons conspired to silence and disarm Plaintiff and not to vacate the arrest warrant, and they also conspired with Norton, Mitch Craig, Horace Craig, and the unidentified deputy to violate Plaintiff's rights.  ECF No. 1, p. 45-55.  Plaintiff alleges that Singleton, Adams, Simmons, Mitch Craig, Norton, and Horace Craig maliciously prosecuted Plaintiff

5

for over two months on the invalid obscenity warrant until the prosecution was finally terminated in favor of Plaintiff for reasons that indicated the Plaintiff's innocence (insufficient evidence), which acts caused Plaintiff economic and non-economic damage. ECF No. 1, p. 55-56.  Plaintiff alleges that these same Defendants committed abuse of process because their ulterior motive was to illegally silence and disarm Plaintiff.  ECF No. 1, p. 57-58.  Plaintiff alleges that these same Defendants intentionally inflicted severe emotional distress on Plaintiff through conduct that was so extreme and outrageous as to exceed all possible bounds of decency.  ECF NO. 1, p. 58-59.

Plaintiff alleges that he was slandered and libeled by Singleton, who made false statements that Plaintiff "had no business carrying a gun," that Plaintiff disseminated obscenity "that . . . is not protected by the Supreme Court" and that "[w]e think we can make a strong case out of this," that "we got him disarmed and off the street," and that "he had material on him about killing cops and that if state or local cops tried to disarm him, he'd have the right to kill them."  ECF No. 1, p. 60-62.  Plaintiff alleges that Singleton published the false and defamatory words to a third party with malice and without justification or privilege during a news conference and that such statements accused Plaintiff of a crime that Plaintiff had not perpetrated and for which he was not charged. Plaintiff alleges that the defamatory remarks were published without justification to *The Journal*, Sullivan, and Sibley, and that Oconee Publishing, The Edwards Group, Leonard, Edwards, Sullivan, Sibley, and *The Journal* republished the defamatory words of Singleton when Singleton's false and defamatory statements were not part of any official report or document. ECF No. 1, p. 63. Plaintiff alleges that the media defendants were not entitled to the privilege of fair report, and they had knowledge that Singleton's statements were

6

false and they "published those statements with reckless disregard of whether the statements were false or not."  ECF No. 1, p. 64.

Plaintiff alleges that "around October 20, 2010," while Plaintiff was displaying a political sign in Walhalla, South Carolina, Defendant Harris physically and verbally abused Plaintiff, searched Plaintiff, and confiscated Plaintiff's personal property, including a .32 caliber Harrington & Richardson double action chrome plated revolver with custom grips and 24 cartridges, which was picked up off the ground and pocketed by Walhalla Police Chief Chastain.  ECF NO. 1, p. 66-68.

Plaintiff alleges that he was denied access to the courts in violation of the 1st Amendment by Defendants Norton and Weaver when they refused to allow Plaintiff to file a claim and delivery action against Sheriff Singleton for recovery of the property held by the Sheriff's Department.  Plaintiff alleges that he was told by Norton and Weaver that "a magistrate in SC has no jurisdiction over cases wherein the state is a party," but Plaintiff alleges that the state was not a party, the Sheriff and himself were the parties.  Plaintiff alleges that Defendant Whitfield refused to accept for filing Plaintiff's petition for a writ of mandamus on the grounds that "the lord doesn't allow his sheep to attack a government official because god has approved of the government and god gives them the power they have."  Plaintiff alleges that Whitfield thereafter told Plaintiff that he could file the petition if he paid the $150 filing fee "but nothing would be done by the clerk's office in connection with the petition," and then Whitfield "called the cops."  Plaintiff alleges that an Oconee

County officer grabbed him and forcibly pushed him out of the courthouse, while Whitfield remarked "praise and bless the lord." ECF No. 1, p. 69-71.[3]

In the Complaint at pages 72-73, Plaintiff lists the amount of monetary damages he seeks from each Defendant, which totals $154 million. At pages 73-79, Plaintiff lists the injunctive relief he seeks, which includes: an order vacating and voiding his invalid arrest warrant; an order and permanent injunction appointing an independent monitor to oversee the Oconee County Sheriff's Department, Magistrates, and Solicitor for the next 15 years, who will report monthly to the Court ; an order establishing independent citizen committees

_____

[3] Plaintiff alleges 13 causes of action, which are organized as follows in his Complaint: (1) count 1: violation of § 1983, unconstitutional search, excessive force, false arrest by Defendants Singleton, Jenkins, M. Craig, Unknown Deputy; ECF No. 1, p. 35; (2) count 2: violation of § 1983, denial of Plaintiff's 6th Amendment right by Defendants Adams, Simmons, Norton, M. Craig, Oconee County and Magistrate's Court; ECF No. 1, p. 36; (3) count 3: violation of § 1983, failure to implement appropriate policies, customs, and practices and failure to train and supervise by Defendants Oconee County, Moulder, and Singleton; ECF No. 1, p. 40; (4) count 4: violation of § 1983, adoption of policy allowing use of excessive force and failure to supervise causing violation of Plaintiff's 4th Amendment rights by Defendants Oconee County, Moulder, and Singleton; ECF No. 1, p. 42; (5) count 5: violation of S.C. common law civil conspiracy by Defendants Singleton, Jenkins, Adams, Simmons, Norton, and Weaver; ECF No. 1, p. 43; (6) count 6: violation of S.C. common law malicious prosecution by Defendants Adams, Simmons, Norton, Singleton, M. Craig, and H. Craig; ECF No. 1, p. 55; (7) count 7: violation of S.C. common law abuse of process by Defendants Adams, Simmons, Norton, Singleton, M. Craig, and H. Craig; ECF No. 1, p. 57; (8) count 8: violation of S.C. common law intentional infliction of emotional distress by Defendants Adams, Simmons, Norton, Singleton, M. Craig, and H,]. Craig; ECF No. 1, p. 58; (9) count 9: violation of S.C. common law slander and libel by Defendants Singleton, *The Journal*, Oconee Publishing, The Edwards Group, Sullivan, Sibley, Leonard, and Edwards; ECF No. 1, p. 60; (10) count 10: request for a declaration of rights pursuant to 28 U.S.C. §§ 2201 and 2202, for declaratory judgment that S.C. Code 56-7-10 is unconstitutional and injunctive relief against county law enforcement agencies and county and state courts; ECF No. 1, p. 64; (11) count 11: violation of 4th Amendment rights by Defendant Harris; ECF No. 1, p. 66; (12) count 12: violation of 1st Amendment access to courts by Defendants Norton, Weaver, and Whitfield; ECF No. 1, p. 69; and (13) count 13: violation of S.C. common law slander and libel by Defendant Jenkins; ECF No. 1, p. 71.

in Oconee County to review and hear complaints about Oconee County police, solicitors, and magistrates; and orders which provide for various other remedies such as: proper training for law enforcement officers; reparations to be paid to those who were unconstitutionally convicted in Oconee County during the past 25 years by use of a uniform traffic citation; a declaratory judgment, pursuant to 28 U.S.C. §§ 2201, 2202, that S.C. Code § 56-7-10 is unconstitutional; and a system providing for the identification of counties and municipalities as "speed traps and corrupt counties" if more than 15% of their income is derived from uniform traffic citation fines and penalties.

## DISCUSSION

### I.    Absolute Judicial Immunity and Quasi-Judicial Immunity Bar Plaintiff's Claims Against Defendants Norton, Weaver, and Whitfield.[4]

A judicial officer in the performance of his or her duties has absolute immunity from suit. *Mireles v. Waco*, 502 U.S. 9, 12 (1991).  This immunity extends to judges of courts of limited jurisdiction, such as municipal and magistrate court judges. *Figueroa v. Blackburn*, 208 F.3d 435, 441-43 (3d Cir. 2000).  Further, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978).  Judicial immunity is not pierced by allegations of corruption or bad faith. *Bradley v. Fisher*, 80 U.S. 335, 247 (1871) ("Nor can this exemption of the judges from civil liability be affected by the motives with which their judicial acts are performed"); *Pierson v. Ray*, 386 U.S. 547, 554 (1967) ("immunity applies even when the judge is accused of acting maliciously and corruptly");

---

[4]  Plaintiff's claims against these Defendants are enumerated in Counts 2, 5, 6, 7, 8, and 12 of Plaintiff's Complaint.

9

*Burns v. Reed*, 500 U.S. 478 (1991) (safeguards built into the judicial system tend to reduce the need for private damages actions as a means of controlling unconstitutional conduct). Judicial immunity is an immunity from suit, not just from ultimate assessment of damages. *Mireles*, 502 U.S. at 11.

There are two circumstances where a judge's immunity from civil liability may be overcome. The exceptions are narrow in scope and infrequently applied. The first exception is where a judge engages in nonjudicial acts, *i.e.*, actions not taken in the judge's judicial capacity. *Id.*; *see Figueroa*, 208 F.3d at 440. The second exception involves actions that, though judicial in nature, are taken in the complete absence of jurisdiction. *Mireles*, 502 U.S. at 12. Generally, "'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.'" *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997). There is, of course, a difference between an act in excess of jurisdiction and one in the absence of jurisdiction. The United States Supreme Court, in *Stump*, provided an example:

> If a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

*Stump*, 435 U.S. at 357 n.7. In *King v. Myers*, 973 F.2d 354 (4th Cir. 1992), the Fourth Circuit looked to the nature of the function performed, pursuant to *Forrester v. White*, 484 U.S. 219, 227-29 (1988), in determining that judicial immunity barred a lawsuit against a magistrate who ordered the arrest of the plaintiff without a warrant. The court found

> [the magistrate's] actions were judicial in that, while she may have exceeded her authority in the manner in which she ordered the arrest, she performed

10

a function "normally performed by a judge."  *Stump v. Sparkman*, 435 U.S. at 362.   Therefore, the district court properly determined that Magistrate Myers was entitled to judicial immunity.

*King*, 973 F.3d at 356-58 (4th Cir. 1992).  Neither exception to the doctrine of absolute judicial immunity is applicable in the instant case.

Plaintiff alleges that Judge Norton erroneously or maliciously issued an invalid and unlawful warrant for Plaintiff's arrest, charging Plaintiff with violating state obscenity law, based on the affidavit of OCSD Deputy M. Craig.  Plaintiff alleges that Judge Norton is liable for monetary damages because state law provides that only a solicitor can request a search or arrest warrant on an obscenity charge.  Plaintiff also alleges that Judge Norton permitted Solicitor Adams and Assistant Solicitor Simmons to dismiss the obscenity charge prior to Plaintiff's scheduled preliminary hearing when Plaintiff was entitled to a jury trial so that he could be acquitted of the charge.  Plaintiff alleges that Judge Norton refused to require the Solicitor's Office to serve Plaintiff with an arrest warrant for breach of peace, but allowed Plaintiff to be arrested and tried on that charge based on a uniform traffic citation, which Plaintiff alleges violated state law and his Sixth Amendment right to have notice of the accusation against him. Plaintiff alleges that Judge Norton conspired with other named Defendants to issue a bogus arrest warrant for Plaintiff on the obscenity charge, while knowing that he had no subject matter or personal jurisdiction to issue the warrant.  Plaintiff alleges that Judge Norton participated with other named Defendants in maliciously prosecuting Plaintiff, committing abuse of process, and intentionally inflicting emotional distress on Plaintiff by maintaining unlawful criminal cases against Plaintiff. Plaintiff alleges that Judge Norton and his judicial assistant, Ms. Weaver, violated Plaintiff's First Amendment right of access to the courts by refusing to allow Plaintiff to file a claim

11

and delivery case against Sheriff Singleton on the ground that the Magistrate Court lacks jurisdiction of cases in which the State is a party. Plaintiff alleges that the proposed claim and delivery action did not involve the State. All of these alleged wrongs enumerated in Plaintiff's Complaint involve Judge Norton's performance of his judicial duties as an Oconee County Magistrate. Thus, Judge Norton has absolute judicial immunity from Plaintiff's official capacity and individual capacity claims against him.

Plaintiff's official capacity and individual capacity claims against Defendant Weaver, Judge Norton's judicial assistant, are barred by Ms. Weaver's absolute quasi-judicial immunity. The doctrine of absolute quasi-judicial immunity has been adopted and made applicable to court personnel, including clerks of court, law enforcement officers, and others who enforce court orders, because of "the 'danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts[.]'" *Kincaid v. Vail*, 969 F.2d 594, 601 (7th Cir. 1992) (quoting *Scruggs v. Moellering*, 870 F.2d 376, 377 (7th Cir. 1989)). "Officials whose duties are comparable to those of judges or prosecutors" are, like judges, entitled to absolute immunity. *Ostrzenski v. Seigel*, 177 F.3d 245, 249 (4th Cir. 1999); *see Goldstein v. Moatz*, 364 F.3d 205, 213 (4th Cir. 2004). Absolute quasi-judicial immunity has also been extended to non-judicial officers "performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune," *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994), and to a judge's subordinates performing "functions that are more administrative in character [that] have been undertaken pursuant to the [judge's] explicit direction." *Kincaid v. Vail*, 969 F.2d 594,

12

601 (7th Cir. 1992). The basis for extending the immunity in these situations is to prevent non-judicial court officials from becoming a "lightning rod for harassing litigation aimed at judicial orders." *Kermit Constr. Corp. v. Banco Credito Y Ahorro Ponceno*, 547 F.2d 1, 3 (1st Cir. 1976). *See, e.g., Foster v. Walsh,* 864 F.2d 416, 417-18 (6th Cir. 1988) (clerk of court absolutely immune for issuing erroneous warrant pursuant to court's order). In addition to alleging that Ms. Weaver and Judge Norton unlawfully prevented Plaintiff from filing a claim and delivery action, Plaintiff alleges that Ms. Weaver conspired with Judge Norton and other named Defendants to deprive Plaintiff of a preliminary hearing on the obscenity charge for over two months. While *Gerstein v. Pugh*, 420 U.S. 103 (1975) held that the Fourth Amendment requires a timely judicial determination of probable cause as a prerequisite to detention, a preliminary hearing itself is not constitutionally mandated. *See, e.g.*, *Peterson v. California*, 604 F.3d 1166 (9th Cir. 2010) ("[O]ther than the probable cause hearing held to justify continued detention of the accused [analyzed under the Fourth Amendment], there exists no federal constitutional right to a preliminary hearing to determine whether a case should proceed to trial." (quoting *Whitman v. Superior Court*, 820 P.2d 262, 270 (9th Cir. 1991)); *United States v. Coley*, 441 F.2d 1299 (5th Cir. 1971).

Plaintiff's official capacity and individual capacity claims against Ms. Whitfield, Oconee County Clerk of Court, are likewise barred by the doctrine of absolute quasi-judicial immunity. Plaintiff alleges that Ms. Whitfield told him that he could not file a petition for writ of mandamus, then told him that he could file the action if he paid the $150 filing fee, but that the Clerk's Office would not do anything in connection with the petition. Plaintiff alleges that Ms. Whitfield called the Sheriff's Department while she and Plaintiff

13

were talking, and, at the conclusion of their conversation, a deputy forcibly escorted Plaintiff out of the courthouse.  In state and federal courts, *pro se*, non-prisoner litigants in fee-paid cases are required to effect service of process on the other parties in the case. While the case is filed and docketed in the office of the clerk of court, the plaintiff - not the clerk of court - is solely responsible for taking the necessary steps to prosecute the lawsuit. Plaintiff's alleged conversation with Ms. Whitfield does not state a plausible claim of violation of Plaintiff's right of access to court.  The alleged subsequent confrontation between Plaintiff and the unidentified deputy cannot be attributed to Ms. Whitfield as she is not responsible for the actions of the OCSD.  With respect to Plaintiff's allegation that Ms. Whitfield "remarked, 'Praise and bless the lord," as she viewed the Plaintiff being kicked out of the courthouse by the Oconee County cop," *see* ECF No. 1, p. 70, mere words, even verbal harassment, abuse and threats, without more, are not sufficient to state a constitutional deprivation under § 1983. *See Henslee v. Lewis*, 153 Fed. Appx. 178, 180 (4th Cir. 2005) (citing *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979).

## II.    Absolute Prosecutorial Immunity Bars Plaintiff's Claims Against Defendants Adams and Simmons.[5]

Plaintiff's official capacity and individual capacity claims against Solicitor Adams and Assistant Solicitor Simmons are barred by Defendants' absolute prosecutorial immunity[6] under *Van de Kamp v. Goldstein*, _ U.S. _ , 129 S.Ct. 855 (2009); *Kalina v. Fletcher,* 522 U.S. 118 (1997); *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993); *Burns v. Reed*, 500 U.S.

---

[5]  Plaintiff's claims against these Defendants are enumerated in Counts 2, 5, 6, 7, and 8 of Plaintiff's Complaint.

[6]  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (absolute immunity "is an immunity from suit rather than a mere defense to liability").

14

478 (1991); *Imbler v. Pachtman*,424 U.S. 416 (1976); *Dababnah v. Keller-Burnside,* 208 F.3d 467 (4th Cir. 2000); and *Carter v. Burch,* 34 F.3d 257 (4th Cir. 1994). Adams and Simmons are immune from suit because it is clear from the Complaint's allegations that Defendants were engaged in prosecutorial functions "intimately associated with the judicial phase of the criminal process" when they allegedly violated Plaintiff's constitutional rights during the prosecution of the criminal charges against Plaintiff in state court. *See Imbler*, 424 U.S. at 430.

In South Carolina, regional prosecutors are called Solicitors and Assistant Solicitors. *See* S.C. Const., art. V, § 24; S.C. Code § 1-7-310. Solicitors are elected by voters of a judicial circuit and have absolute immunity for their prosecution-related activities in or connected with judicial proceedings, when acting as "an officer of the court." *See Van de Kamp*, 129 S.Ct at 861. Such protected activities include, but are not limited to, prosecutorial actions and decisions related to the Solicitor's participation in a criminal trial, bond hearings, grand jury proceedings, pre-trial motions hearings, and ancillary civil proceedings. *Id.* at 855 (absolute immunity applies when a prosecutor is involved in supervision or training of prosecutors or management of a trial-related information system); *Imbler v.Pachtman*,424 U.S. 416 (1976) (absolute immunity applies to a state prosecutor, acting within the scope of his duties in initiating and pursuing a criminal prosecution and in presenting the state's case, despite allegations that he knowingly used perjured testimony, deliberately withheld exculpatory information, and failed to make full disclosure of all facts casting doubt upon the state's testimony); *Carter v. Burch,* 34 F.3d 257 (4th Cir. 1994) (absolute immunity applies when a prosecutor is alleged to have withheld

15

exculpatory evidence and conspired to present false testimony during trial).  Absolute immunity extends to "persons working under [a prosecutor's] direction, when they function as advocates for the state" and are clearly associated with the judicial process. *Bernard v. County of Suffolk*, 356 F.3d 495, 502 (2d Cir. 2004).

Plaintiff alleges that Adams and Simmons violated his Sixth Amendment right to a jury trial by dismissing the obscenity charge against Plaintiff prior to his scheduled preliminary hearing and violated Plaintiff's Sixth Amendment right to notice of the accusation against him by authorizing the use of a uniform traffic ticket to charge Plaintiff with breach of peace.  Plaintiff misstates the Sixth Amendment right, which provides that if a criminal prosecution proceeds to trial, the defendant shall "enjoy the right to a speedy and public trial."  In *Barker v. Wingo*, 407 U.S. 514 (1972), the United States Supreme Court held that a delay of more than a year in bringing a criminal defendant to trial was "presumptively prejudicial" to the defendant's Sixth Amendment rights.  In *Barker*, the Supreme Court set forth the approach under which the Sixth Amendment (as imposed on the states by the due process clause of the Fourteenth Amendment) is to be evaluated, specifically adopting "a balancing test, in which the conduct of both the prosecution and the defendant are weighed." *Barker*, 407 U.S. at 530.  The Supreme Court identified four factors that courts should assess in determining whether a particular defendant has been deprived of his right: (1)  the length of the delay, (2)  the reason for the delay, (3)  the defendant's assertion of the right to a speedy trial, and (4)  the prejudice to the defendant as a result of the delay. *Id.*  "Governmental delays motivated by bad faith, harassment, or attempts to seek a tactical advantage weigh heavily against the government, while neutral

16

reasons such as negligence are weighted less heavily, and valid reasons for a delay weigh in favor of the government." *United States v. Robinson*, 455 F.3d 602, 607 (6th Cir. 2006); *see also United States v. Hall*, 551 F.3d 257  (4th Cir. 2009).

Here, there was no significant delay in the disposition of Plaintiff's obscenity arrest warrant.  Plaintiff alleges, and the Oconee County Tenth Judicial Circuit Court Public Index confirms, that Plaintiff's arrest warrant on the obscenity charge, issued on November 8, 2010 and filed on November 12, 2010, was dismissed by the Solicitor's Office on January 14, 2011.[7]  Rule 3 of the South Carolina Rules of Criminal Procedure requires that magistrates, municipal judges, and others authorized to issue warrants forward arrest warrants and bonds to the Clerk of Court within 15 days from the date of arrest and that the Clerk of Court forward the warrant to the solicitor within two business days.  The solicitor is required, within 90 days after receipt of an arrest warrant from the Clerk of Court, to

> take action on the warrant by (1) preparing an indictment for presentment to the grand jury, which indictment shall be filed with the Clerk of Court, assigned a criminal case number, and presented to the Grand Jury; (2) formally dismissing the warrant, noting on the face of the warrant the action taken; or (3) making other affirmative disposition in writing and filing such action with the Clerk of Court

Rule 3(c) S.C. R. Crim. P.  Adams and Simmons formally dismissed Plaintiff's obscenity arrest warrant within 90 days of Plaintiff's arrest.

---

[7]  *See* http://publicindex.sccourts.org/oconee/publicindex/PISearch.aspx (last visited Dec. 29, 2011).  The Court takes judicial notice of Plaintiff's state court proceedings.  *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the content of court records'").

Plaintiff also alleges that Adams and Simmons conspired with other named Defendants to disarm and silence Plaintiff by denying Plaintiff his right to a preliminary hearing.  Plaintiff's allegations are contradictory in that he first alleges that the obscenity warrant was unlawful because it was not authorized by Adams and/or Simmons, then alleges that Adams and Simmons unlawfully authorized the warrant.  In any event, it is well-settled in this Circuit that prosecutors are absolutely immune from liability for damages based on their decisions about "whether and when to prosecute," *Lyles v. Sparks*, 79 F. 3d 372, 377 (4th Cir. 1996), and whether or not to go forward with a prosecution. *Springmen v. Williams*, 122 F. 3d 211, 212-13 (4th Cir. 1997).  Moreover, as pointed out above, other than the probable cause hearing held to justify continued detention of a criminal defendant, there is no federal constitutional right to a preliminary hearing to determine whether a case should proceed to trial.  In South Carolina, Rule 2 S.C. R. Crim. P., S.C. Code § 17-23-160, and S.C. Code § 22-5-320[8] set forth the requirements concerning preliminary hearings and their impact on the jurisdiction of the magistrate courts and courts of general sessions to try defendants who have requested preliminary hearings. Rule 2 S.C. R. Crim. P. provides that "any defendant charged with a crime not triable by a magistrate shall be brought before a magistrate and shall be given notice of his right to a preliminary hearing solely to determine whether sufficient evidence exists to warrant the defendant's detention and trial." Rule 2(a) S.C. R. Crim. P.  In *State v. McClure*, 289

---

[8]  The South Carolina Supreme Court has found that the provisions of S.C. Code § 22-5-320 violate S.C. Const. Art. V, § 11 and are unconstitutional to the extent that this statute purports to deprive the court of general sessions of jurisdiction to try criminal defendants who have demanded a preliminary hearing but have not been provided one by the magistrate's court. *See State v. Keenan*, 296 S.E.2d 676 (S.C. 1982).

S.E.2d 158 (S.C. 1982), the South Carolina Supreme Court, in considering Rule 2 S.C. R. Crim. P and S.C. Code § 17-23-160, held that "a defendant's right to request a preliminary hearing is provided solely by state statute.  It is not required by either the State or Federal Constitution and is not necessary before a grand jury can indict a person for a crime." *McClure*, 277 S.C. at 434.  Consequently, even in the absence of Defendants' immunity, Plaintiff's Complaint fails to state a plausible claim that he was prejudiced or injured by Defendants' alleged violation of any constitutionally or statutorily protected right of Plaintiff to have a preliminary hearing, where the need for such a preliminary hearing was eliminated by the Solicitor's Office's dismissal of the charge against Plaintiff.  Plaintiff's claim that Adams and Simmons violated his Sixth Amendment right to notice of the accusation against him by authorizing the use of a uniform traffic ticket to charge Plaintiff with breach of peace is, likewise, barred by these Defendants' absolute prosecutorial immunity.

## III.    Eleventh Amendment Immunity Bars Plaintiff's Official-Capacity Claims for Damages Against Defendants Singleton, Jenkins, M. Craig, and Unidentified Oconee County Deputy.[9]

Under South Carolina law, a sheriff's department is a state agency, not a municipal department,[10] and has Eleventh Amendment immunity from a suit for monetary damages under § 1983.  *See Millmine v. County of Lexington*, C/A No. 3:09-1644-CMC, 2011 WL 182875, at *5 (D.S.C. Jan. 20, 2011); *Johnson v. Newberry County Det. Ctr.*, C/A No.

---

[9]  Plaintiff's official-capacity claims against these Defendants are enumerated in Counts 1, 2, 3, 4, 5, 6, 7, 8, 9, 12, 13 of Plaintiff's Complaint.

[10]  Article V, section 24 of the South Carolina Constitution and S.C. Code Ann. § 23-11-10 provide for the election of a sheriff in each county.

4:09-00047-HFF-TER, 2010 WL 737843, at *11 (D.S.C. Feb. 26, 2010); *Stewart v. Beaufort County*, 481 F. Supp. 2d 483, 492-93 (D.S.C. 2007). The Fourth Circuit has affirmed the dismissal of § 1983 claims against sheriff's departments and sheriff's deputies based on lack of federal court jurisdiction due to their Eleventh Amendment immunity. *See Wall v. Sloan*, No. 96-2461,1998 WL 54938, at *1 (4th Cir. 1998); *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996); *Gulledge v. Smart*, 691 F.Supp. 947 (D.S.C. 1988). In the instant case, Plaintiff's official capacity claims for monetary damages against the Defendants who are members of the OCSD are barred by these Defendants' Eleventh Amendment immunity.

**IV.** ***Younger* Abstention Doctrine Bars Plaintiff's Claims for Declaratory and Injunctive Relief Challenging the Constitutionality of State Criminal Statute, S.C. Code § 56-7-10.**[11]

In Plaintiff's "Notice of Constitutional Challenge to a State Statute," he alleges that South Carolina Code § 56-7-10 "[a]s applied, [] permits, not only arrest, but trial, on a uniform traffic citation, thereby violating the 4th and 6th Amendment to the U.S. Constitution." ECF No. 2, p. 2. Plaintiff alleges that he "was in the instant case arrested and tried and convicted of breach of peace on a uniform traffic citation, and the Plaintiff herein was arrested and jailed on a uniform traffic citation." ECF No. 2, p. 3. Plaintiff further alleges "Breach of peace is not a crime that South Carolina statute 56-7-10 permits arrest for by uniform traffic citation. Yet the Plaintiff has been arrested, charged and tried

---

[11] Plaintiff's claim challenging the Constitutionality of S.C. Code § 56-7-10 is enumerated in Count 10 of Plaintiff's Complaint and in Plaintiff's "Notice of Constitutional Challenge to a State Statute."

several times for breach of peace on a uniform traffic citation." ECF No. 2, p. 4.  Plaintiff

also alleges

> The Plaintiff includes as exhibits to this notice two arrest warrants with which
> he was arrested which show the incompetency of issuing judges and cops.[12]
> Both warrants fail to establish probable cause.  And in one case the warrant
> fails to establish that the Plaintiff perpetrated a crime, and one warrant fails
> to state how a cop knew the Plaintiff has committed a crime since the cop
> was not a witness to the alleged commission of the crime.  Additionally, one
> warrant fails to even charge a crime as the magistrate and cop and sheriff
> were so ignorant of the law as to make their efforts [to] establish probable
> cause and a valid arrest risible.

ECF No. 2, p. 6.

In Plaintiff's Complaint, at p. 73-79, Plaintiff lists the declaratory and injunctive relief

he seeks, which includes: an order "vacating and voiding the invalid arrest warrant

employed by Oconee County to arrest the Plaintiff on the obscenity charge" (ECF No. 1,

p. 73) and

> an order and injunction declaring South Carolina Law 56-7-10 repugnant to
> the 4th and 6th Amendments to the United States Constitution, and to enjoin
> enforcement thereof; that where the uniform traffic citation is employed in
> South Carolina, it carry a stamped message to the recipient that a United
> States District Court has determined the citation is constitutionally insufficient
> to effect a search or/and seizure, or for a charging document at a trial, and
> that it is issued for informational purposes only.

ECF No. 1, p. 78-79.  Plaintiff also seeks an order and permanent injunction that "appoints

an independent monitor to oversee the Oconee County Sheriff's Department, Oconee

County Magistrates, and Oconee County Solicitor for 15 years and that reports to the (sic)

---

[12]  The arrest warrants are:  (1)  warrant no. N-137262, issued on November 8,
2010, for the offense of "obscene/dissemination, procuring or promoting obscenity
unlawful," "Code 16-15-0305,(H)." ECF No. 1-1; (2)  uniform traffic citation no.
33075FC, "date of violation 11/08/2010," for the "common law" offense of "breach of
peace."  ECF No. 1-2.

verbally and in writing to the Court on a monthly basis," ECF No. 1, p. 73, "establishes an independent citizen Police Review Committee . . . Solicitor Review Committee . . . and citizen Magistrate Review Committee." ECF No. 1, p. 75. Plaintiff requests that the Court order that the citizen review committees "hear complaints of misconduct against Oconee County Sheriff's Department, Walhalla Police Department, Oconee County Solicitor and Oconee County Magistrates," and make recommendations to the independent monitor, the South Carolina Bar Association, and the South Carolina Supreme Court as to discipline and punishment of law enforcement officers, solicitors, and magistrates. *Id.* Plaintiff also requests that the Court order various other remedies such as proper training for law enforcement officers, reparations to be paid to those who were unconstitutionally convicted in Oconee County during the past 25 years by use of a uniform traffic citation, and a system providing for the identification of counties and municipalities as "speed traps and corrupt counties" if more than 15% of their income is derived from uniform traffic citation fines and penalties. *See* ECF No. 1, p. 73-79.

Absent extraordinary circumstances, a federal court must abstain from exercising federal jurisdiction when to do so would interfere with a pending state criminal proceeding. *Younger v. Harris*, 401 U.S. 37, 44 (1971) (holding that a federal court must abstain from enjoining a state criminal proceeding); *see also Samuels v. Mackell*, 401 U.S. 66 (1971) (holding that federal courts may not provide a plaintiff with declaratory relief when he is subject to a pending state court criminal prosecution). *Younger* demands abstention "where granting the requested relief would require adjudication of federal constitutional

issues involved in the pending state action." *Traverso v. Penn*, 874 F.2d 209, 212 (4th Cir. 1989).

In *Younger*, the United States Supreme Court held that a federal court should not equitably interfere with state criminal proceedings "except in the most narrow and extraordinary of circumstances." *Gilliam v. Foster*, 75 F.3d 881, 903 (4th Cir. 1996). The *Younger* Court noted that courts of equity should not act unless the moving party has no adequate remedy at law and will suffer irreparable injury if denied equitable relief. *Younger*, 401 U.S. at 43-44 (citation omitted). From *Younger* and its progeny, the United States Court of Appeals for the Fourth Circuit has culled the following test to determine when abstention is appropriate: "(1) there are ongoing state judicial proceedings; (2) the proceedings implicate important state interests; and (3) there is an adequate opportunity to raise federal claims in the state proceedings." *Martin Marietta Corp. v. Maryland Comm'n on Human Relations*, 38 F.3d 1392, 1396 (4th Cir. 1994) (citing *Middlesex County Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

Applying this test to the instant facts, it appears that Plaintiff was arrested on January 14, 2011, and charged with breach of peace in an ongoing state criminal proceeding. Plaintiff alleges that he was "arrested and tried and convicted of breach of peace on a uniform traffic citation." The Court takes judicial notice of the online records of the Oconee County Tenth Judicial Circuit Court Public Index, which indicate that Plaintiff appealed his conviction and sentence of the payment of a fine of $262.50 to the Oconee County Circuit Court. The Oconee County Magistrate Court has issued its appeal return, and the appellate case, 2011-CP-37-01203, filed on December 8, 2011, is pending in the

23

Oconee   County   Circuit   Court.   *See* http://publicindex.sccourts.org/oconee/publicindex/PISearch.aspx (last visited Dec. 29, 2011).  Accordingly, the second criterion has been addressed by the United States Supreme Court's statement that "the States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief." *Kelly v. Robinson*, 479 U.S. 36, 49 (1986).  With regard to the third criterion, the United States Supreme Court has noted "that ordinarily a pending state prosecution provides the accused a 'fair and sufficient opportunity for vindication of federal constitutional rights.'" *Gilliam*, 75 F.3d at 904 (quoting *Kugler v. Helfant*, 421 U.S. 117, 124 (1975)). *See also Nivens v. Gilchrist*, 444 F.3d 237, 241 (4th Cir. 2006).

Also, the Anti-Injunction Act, 28 U.S.C. § 2283, expressly prohibits this Court from enjoining Plaintiff's state court proceedings. *Bonner v. Circuit Ct. of St. Louis*, 526 F.2d 1331, 1336 (8th Cir. 1975).  In *Bonner*, the Eighth Circuit pointed out that federal constitutional claims are cognizable in both state courts and in federal courts: "Congress and the federal courts have consistently recognized that federal courts should permit state courts to try state cases, and that, where constitutional issues arise, state court judges are fully competent to handle them subject to Supreme Court review." *Id.*; *see also D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983) (federal courts cannot review state court proceedings in an appellate sense); *Gurley v. Superior Court of Mecklenburg County*, 411 F.2d 586, 587-88 (4th Cir. 1969) (federal courts may not issue writs of mandamus against state courts).

24

Thus, in the instant case, it would be improper for this Court to grant declaratory and/or injunctive relief on federal constitutional grounds, because the criminal prosecution involving the challenged state statute is pending against Plaintiff in the state court of South Carolina and was pending at the time Plaintiff initiated this federal case.  "Since the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts." *Younger*, 401 U.S. at 43.  *See also Cinema Blue of Charlotte, Inc. v. Gilchrist*, 887 F.2d 49 (4th Cir. 1989).  In *Cinema Blue*, the Fourth Circuit ruled that federal district courts should abstain from constitutional challenges to state judicial proceedings, no matter how meritorious, if the federal claims have been or could be presented in an ongoing state judicial proceeding. *Id.* at 52.  Plaintiff is not foreclosed from raising his constitutional objections to the state statute and having them ruled on by the state circuit court in Plaintiff's ongoing state criminal prosecution.  This Court cannot remove the authority to rule on such an objection from the state court judge presiding in Plaintiff's state criminal case.

**V.      *Younger* Abstention Doctrine Requires Stay of Plaintiff's § 1983 and Related State Law Individual Capacity Claims for Monetary Damages Against Defendants Singleton, Oconee County, Jenkins, M. Craig, H. Craig, and Moulder, While These Claims are at Issue in Plaintiff's Pending State Criminal Proceeding.**[13]

Plaintiff seeks monetary damages for the alleged unconstitutional search and seizure of his person and property and the alleged use of excessive force in effecting his arrest on November 8, 2010.  Plaintiff alleges that he was initially unlawfully charged with

---

[13]  Plaintiff's claims against these Defendants are enumerated in Counts 1, 2, 3, 4, 5, 6, 7, and 8 of Plaintiff's Complaint.

violation of state obscenity law and that this allegedly invalid arrest warrant was dismissed on January 14, 2011, at which time Plaintiff was immediately, unlawfully re-arrested on the state common law charge of breach of peace, which Plaintiff was alleged to have committed on November 8, 2010.  In asserting claims pursuant to § 1983 for violation of Plaintiff's civil rights (counts 1, 2, 3 and 4) and state law claims of civil conspiracy, malicious prosecution, abuse of process, and intentional infliction of emotional distress (counts 5, 6, 7, and 8) against the above-named Defendants, Plaintiff alleges that, on November 8, 2010, "defendants . . .  acted under color of state law by asserting their authority and falsely arresting, searching and beating up the Plaintiff with no basis in law or fact to do so."  ECF No. 1, p. 35.  Plaintiff alleges that

> Defendant, Jenkins, fully intended to charge the Plaintiff with breach of peace, when the Defendants arrested the Plaintiff without probable cause, on November 8, 2010.  When Defendant Singleton read the Plaintiff's writings about violent defense of constitutional rights, which writing[s] are protected by United States Supreme Court decisions, Defendant Singleton, upon information and belief, after consultation and agreement with the Defendant Adams, and Defendant Norton, conceived the goal of disarming and silencing and denying the Plaintiff his right to free press and free speech to the Plaintiff by falsely charging the Plaintiff with the felony of disseminating obscenity.  On information and belief, Plaintiff avers that all employees in the sheriff's department knew enough about South Carolina law to understand obscenity.  So the Solicitor conferred with the defendant Sheriff, Craig and Jenkins as to how to frame the warrant affidavit and frame the Plaintiff.  This malicious and mendacious scheme of the Defendant Singleton comported with the urgings of [] Horace Craig who also wanted the Plaintiff silenced for using the 'f' word.  The felony charge made it illegal under federal and state law for the Plaintiff to possess a gun, or even to possess a single grain of gunpowder.  Upon information and belief, Defendant Singleton planned to raid the Plaintiff's house in the early morning hours to seize the Plaintiff's firearms and to charge the Plaintiff with violations of state and firearm laws that carry penalties of 20 years imprisonment and fines of $100,000.00.  In fact, the Defendants did visit the Plaintiff's residence to ask his wife if the Plaintiff was a member of a subversive or terroristic gang.  Said visit terrified the Plaintiff's wife.

ECF No. 1, p. 44-45.  Plaintiff also alleges "[a]fter the felony charge was dismissed, Plaintiff was immediately arrested by Defendant Mitch Craig on an undefined charge of breach of peace initiated by the solicitor who was not a witness.  The facts supporting a charge of breach of peace are not included in defendant Mitch Craig's incident report." ECF No. 1, p. 50.  In asserting his claims that Defendants intended to arrest Plaintiff for breach of peace, but lacking probable cause for that charge and having read Plaintiff's writings about the violent defense of constitutional rights, Defendants instead conspired to use the pretext of an obscenity arrest to silence and disarm Plaintiff, Plaintiff further alleges

> Defendants, Singleton, Adam[s], Matthew Craig, Simmons, Norton, including Horace Craig, procured the issuance of, and issued, an invalid felony warrant with the ulterior motive of illegally silencing and disarming the Plaintiff, an illegitimate objective of an invalid arrest warrant.  Defendants willfully did not obtain a solicitor's request for the invalid warrant, when they were required by statute to do so.  Defendants were not authorized by South Carolina law to apply for a[n] obscenity warrant without the request of a solicitor.  The ulterior purpose of obtaining the illegal warrant is shown by the nolle prosequi of the warrant on the solicitor's motion.

ECF No. 1, p. 58.  Plaintiff also alleges that Defendants Oconee County, Moulder, and Singleton failed to implement policies, customs, and practices, and failed to train and supervise OCSD personnel, so as to prevent the violation of Plaintiff's rights, or, in the alternative, that these Defendants adopted and allowed the use of excessive force by OCSD personnel.  *See* ECF No. 1, p. 40-43.

Plaintiff's allegations raise issues of fact concerning the Defendants' lack of probable cause to search and seize Plaintiff, and the Defendants' lack of legal authorization to arrest Plaintiff on November 8, 2010, on either an obscenity charge or a breach of peace charge.  In addition, Plaintiff's allegations raise issues of fact concerning the Defendants initial intent to illegally arrest him for breach of peace, which Plaintiff

27

alleges then became a conspiracy to illegally arrest Plaintiff on the charge of disseminating obscenity, in order to silence and disarm Plaintiff.

As noted in Section IV above, the Court is constrained under *Younger v. Harris* and its progeny to abstain from considering Plaintiff's allegation that his arrest on the charge of breach of peace was based on an unconstitutional state statute. This Court should not interfere in Plaintiff's pending state criminal proceedings by entertaining Plaintiff's claims for injunctive relief and a declaratory judgment. Because Plaintiff is also seeking monetary damages in connection with the alleged events on November 8, 2010, to rule on these claims will also require the Court to decide – separate and apart from the issue of the constitutionality of S.C. Code §56-7-10 – whether Defendants unlawfully searched, seized, and arrested Plaintiff on November 8, 2010, without probable cause to believe that Plaintiff had committed a breach of peace or had disseminated obscenity. Secondly, the Court must then determine if Defendants unlawfully charged Plaintiff with disseminating obscenity, then unlawfully dismissed that charge, on January 14, 2011, and immediately unlawfully arrested Plaintiff for breach of peace. Thirdly, the Court must determine if the initial obscenity arrest was a pretext to effectuate Defendants' alleged conspiracy to silence and disarm Plaintiff for publicly airing his First and Second Amendment views. The undersigned is concerned that the Court's decisions on these legal and factual issues will interfere with Plaintiff's pending state criminal proceeding and violate the principles of *Younger*.

The United States Supreme Court has not directly addressed whether *Younger* abstention applies to § 1983 claims for damages. *See Deakins v. Monaghan*, 484 U.S. 193, 202 (1988) ("We need not decide the extent to which the *Younger* doctrine applies

28

to a federal action seeking only monetary relief.").  In *Deakins*, the Supreme Court held that, because the state proceedings could not have awarded damages, the district court erred in dismissing the federal court plaintiffs' claim for monetary relief; however, the Supreme Court explained that the federal court should have stayed, not dismissed, the federal litigation. *Deakins,* 484 U.S. at 202, 204.  Lower courts have also held that *Younger* requires courts to stay – rather than abstain and dismiss – suits for monetary relief where the same issues are pending before a state court. *See Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1075-76 (6th Cir. 1998); *Simpson v. Rowan*, 73 F.3d 134, 138-39 (7th Cir. 1995); *Williams v. Hepting*, 844 F.2d 138, 144 (3d Cir. 1988).  Staying the federal action "protect[s] against the possibility that [the plaintiff] could be deprived of the opportunity to present the merits of her damages claim in state court." *Carroll*, 139 F.3d at 1075-76. Further, a stay ensures that a plaintiff who is unable to pursue damages in the parallel state proceedings can return to federal court and reassert his or her claim for damages without being time-barred. *See id.* at 1076 (observing that "a stay will protect [the plaintiff's] claims from the statute of limitations").  Moreover, staying rather than dismissing the action is consistent with the Supreme Court's decision in *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996), which held that "abstention principles [apply] to actions 'at law' only to permit a federal court to enter a stay order that postpones adjudication of the dispute, not to dismiss the federal suit altogether." *Quackenbush*, 517 U.S. at 719.

In *Nivens v. Gilchrist*, 444 F.3d 237 (4th Cir. 2006), the Fourth Circuit held that

> One of the principles underlying *Younger* is that it is unnecessary for a federal court to enjoin a pending prosecution or declare a statute unconstitutional because a state court may itself make either of those judgments in response to a defendant's objections during prosecution. State

29

> criminal proceedings do not, however, allow for claims of money damages
> by criminal defendants - such a claim is simply not available.  Therefore,
> a "District Court has no discretion to dismiss rather than to stay claims for
> monetary relief that cannot be redressed in the state proceeding."  *Deakins
> v. Monaghan*, 484 U.S. 193, 202 (1988).

*Nivens*, 804 F.2d at 248.  In  *Suggs v. Brannon*, 894 F.2d 274 (4th Cir. 1986), the Fourth

Circuit also held that "*Younger* does not invariably require dismissal of § 1983 damage

actions" where the federal court is asked to determine issues pending before a state court;

however, a stay is appropriate in such situations. *Suggs*, 804 F.2d at 279-80.  In *Suggs*,

the plaintiffs were employees of adult bookstores who were the subjects of multiple state

prosecutions for possession with intent to distribute obscenity. *Id.* at 276-77.  While their

state criminal charges were pending, the plaintiffs brought civil rights actions against the

police officers who investigated and arrested plaintiffs, seeking injunctive relief and

damages under § 1983. *See id.* at 277-78.  The plaintiffs alleged that the police officers

engaged in illegal searches and seizures and a concerted campaign of threats,

harassment, and bad faith enforcement of North Carolina obscenity laws, thereby denying

plaintiffs due process of law in violation of their Fourteenth Amendment rights. *Id.*  Chief

Judge Hiram Ward dismissed the complaint pursuant to the *Younger* abstention doctrine.

*Id.* at 278.  The Fourth Circuit upheld Judge Ward's dismissal of the claim for injunctive

relief but  held that the claim for damages should have been stayed rather than dismissed.

*Id.* at 279-80.  The Fourth Circuit explained its ruling as follows:

> *Younger* abstention presupposes that the federal plaintiff will have an
> adequate opportunity to raise constitutional claims during the ongoing state
> proceeding. *See Craig v. Barney*, 678 F.2d 1200, 1201-02 (4th Cir. 1982).
> A state criminal proceeding, however, ordinarily would not address issues
> such as appellants' claim that they were held under excessive bond and
> unconstitutional bail conditions, for pretrial detention issues cannot be raised

in defense of a criminal prosecution. *See Gerstein v. Pugh*, 420 U.S. 103, 108 n. 9 (1975). If the state criminal court rules that the search and seizure was unlawful, Smith could not recover damages in those proceedings. Deferring the appellants' right to institute an action for damages until the conclusion of the criminal cases might cause their claims to be barred by a statute of limitations. Thus, in order to afford plaintiffs a day in court, they should be allowed to maintain their actions for damages. *See Hanpar v. Atkinson*, 496 F.Supp. 112, 115 (E.D.Va. 1980).

The appellees argue that the exercise of federal jurisdiction would result in simultaneous litigation of the same issues in which the district court's ruling might embarrass and interfere with the state proceedings. This need not be the case. In *Giulini v. Blessing*, 654 F.2d [189,] 193 [(2d Cir.1981)], the court, deciding that a § 1983 damage claim is not barred by *Younger*, noted that "a federal court is not precluded, in the exercise of its discretion, from staying proceedings in the action before it pending a decision by the state court, with a view to avoiding wasteful duplication of judicial resources and having the benefit of the state court's views." The court then ordered that the damage claims be held in abeyance until the state court had adjudicated the relevant constitutional issues.

The district court did not address the merits of the damage claim, nor do we. A stay is appropriate. If the criminal trials provide the parties with a full and fair opportunity to litigate their constitutional claims, they may then possibly assert the state court judgment to preclude either claim or defense as the case may be. But this is not the appropriate proceeding for resolving this issue. *See generally* 18 Wright, Miller & Cooper, *Federal Practice and Procedure* § 4471 (1981 & 1986 Supp.).

*Id.*

Here, Plaintiff is asking the Court to make determinations identical to the determinations that must also be made by the Oconee County Circuit Court in Plaintiff's pending appeal of his breach of peace criminal conviction in the Oconee County Magistrate's Court. As such, proceeding in this case in federal court would result in simultaneous litigation of the same issues such that this Court's ruling would almost assuredly interfere with the pending state court proceedings. Further, a determination by the state court that the search, seizure, and arrest for breach of peace was legal would be

31

binding on this Court and would preclude Plaintiff from asserting that the breach of peace arrest was illegal in action for monetary damages brought pursuant to § 1983 and state common law causes of action. *See Heck v. Humphrey*, 512 U.S. 477 (1994) (holding that a state prisoner cannot base a § 1983 action on a ground that would "necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement").  For these reasons, and because the undersigned finds that the constitutional issues presented in these individual capacity claims for monetary damages are inextricably intertwined with the constitutional issues presented in the ongoing state prosecution, the Court should exercise its discretion and stay Plaintiff's individual capacity claims for monetary damages against Defendants Singleton, Oconee County, Jenkins, M. Craig, H. Craig, and Moulder ("the alleged state actor defendants") in this action, pending "ultimate termination of the state prosecution, including any relevant state collateral review proceedings, whether by adjudication on the merits or by a decision of the state at any point to abandon or forego the prosecution." *See Traverso*, 874 F.2d at 214; *Richardson v. Union Pub. Safety Dep't Police*, Case No. 7:10-cv-2679-JMC-JDA, 2011 WL 2193330 (D.S.C. May 13, 2011) adopted by, motion denied by, stay granted by, motion dismissed by 2011 WL 2198291 (D.S.C. June 6, 2011).

Therefore, this action should be stayed until the conclusion of the Plaintiff's state criminal prosecution, and Plaintiff should be directed to petition the Court, at that time, to lift the stay in this action.  At that point, the Court should authorize Plaintiff to effect service

of process on the remaining Defendants in this case, depending on the outcome of the

state case.[14]

## VI.     Lack of Supplemental Jurisdiction of Plaintiff's Unrelated State-Law Defamation Claim Requires Summary Dismissal, Without Prejudice, of the Claim against Defendants *The Journal*, Sullivan, Sibley, Leonard, Edwards, Oconee Publishing, and The Edwards Group.[15]

It is clear, with respect to Defendants *The Journal*; Oconee Publishing, The Edwards

Group; Andrew Sullivan, Jessica Sibley, Michael Leonard, and Steve Edwards ("the media

defendants"), that the allegations of Plaintiff's Complaint are insufficient to show that the

case against them is one "arising under the Constitution, laws, or treaties of the United

States." *See* 28 U.S.C. § 1331.  That is, the Complaint does not state a claim cognizable

under this Court's federal question jurisdiction.  Plaintiff's allegations against the media

defendants do not contain any explicit reference to an alleged violation of a federal statute,

treaty, or constitutional provision, nor is any type of federal question jurisdiction of the

media defendants otherwise evident on the face of the Complaint.  The United States

---

[14]  Plaintiff's official capacity and individual capacity claim for damages against Defendant Harris, a Walhalla Police Officer, enumerated in Plaintiff's Complaint in Count 11, alleges that Harris violated Plaintiff's 4th Amendment rights on October 20, 2010, when Harris allegedly unlawfully searched Plaintiff and seized a weapon from Plaintiff that Plaintiff alleges he was authorized to carry pursuant to a concealed weapons permit.  This separate federal claim is unrelated to the claims arising out of the events that occurred on November 8, 2010, and does not derive from a common nucleus of operative fact with the other claims that should be stayed pending the outcome of Plaintiff's state court criminal proceeding.  However, in exercising this Court's discretion and considering "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy," the undersigned recommends that the claim against Defendant Harris also be stayed.

[15]  Plaintiff's claim against these Defendants is enumerated in Count 9 of Plaintiff's Complaint.

33

Supreme Court has held that an individual cannot claim a constitutionally protected interest in his or her reputation, *Siegert v. Gilley*, 500 U.S. 226, 233 (1991), thus allegations of defamation alone do not suffice to form a § 1983 claim. *See Paul v. Davis*, 424 U.S. 693 (1976). Defamation is only actionable under § 1983 if it occurs in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state law or protected by the Constitution. *Clark v. Township of Falls*, 890 F.2d 611, 619 (3d Cir. 1989) (citing *Paul*, 424 U.S. at 701-12). Such cases implicate the constitutional guarantee of due process. *Id.* Courts have labeled the showing required to bring a § 1983 claim for defamation "stigma plus." *See e.g., DeFeo v. Sill*, 810 F.Supp. 648, 656 (E.D. Pa. 1993) ("Unless coupled with a tangible injury such as a loss of employment or extinction of a vested right recognized by state law, defamation by state officials is not actionable under Section 1983").[16] Thus, to the extent that Plaintiff attempts to assert a claim against the media defendants pursuant to § 1983, Plaintiff fails to state a claim for which this Court may grant relief. *See Paul v. Davis*, 424 U.S. 693, 697-710 & nn. 3-4 (1976); *Washington v. Tilton*, C.A. No. 2:10-997-HFF-RSC, 2010 WL 2084106, at *2 (D.S.C. 2010). Civil rights statutes, such as § 1983, do not impose liability for violations of duties of care arising under a state's tort law. *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 200-03 (1989).

---

[16] Plaintiff's defamation claims against Defendant Singleton and Defendant Jenkins, enumerated in Counts 9 and 13 of Plaintiff's Complaint, to the extent that they rely on § 1983 and allege Singleton's and Jenkins' defamatory reports to SLED that allegedly resulted in the loss of Plaintiff's concealed weapons permit, may state a plausible claim. However, those claims should be stayed, along with the other individual capacity claims for monetary damages against Defendants Singleton, Oconee County, Jenkins, M. Craig, H. Craig, Moulder, and Harris ("the alleged state actor defendants"), as discussed above in Section V.

Plaintiff's state law based defamation cause of action against the media defendants may only be heard in federal court where there is diversity of citizenship among the parties or where there is supplemental jurisdiction based on other viable federal claims. *See Ysais v. Richardson*, 603 F. 3d 1175, 1179 (10th Cir. 2010).   Clearly, there is no diversity jurisdiction in this case, so Plaintiff's defamation claim can be heard only if it is supplemental to Plaintiff's federal claims.   Because Plaintiffs' federal question claims and related state-law claims against the alleged state actor defendants are either subject to summary dismissal or subject to a stay pending the outcome of Plaintiff's state court criminal proceeding, this Court should decline to exercise supplemental jurisdiction over the state law defamation claim that Plaintiff asserts against the media defendants.   Under supplemental jurisdiction, the federal claims act as a jurisdictional "crutch." *See* David D. Siegel, Commentary on 1990 Revision, appended to 28 U.S.C.A. § 1367 (West 1993). Title 28 U.S.C. § 1367(c)(3) recognizes that, once that crutch is removed, a remaining state claim should not be adjudicated.   Because the undersigned has recommended that this Court summarily dismiss the federal claims against five Defendants and stay the federal claims against seven other Defendants, the Court should decline to exercise its supplemental jurisdiction over Plaintiffs' state law defamation claim against these seven Defendants, *i.e.* the media defendants, pursuant to 28 U.S.C. § 1367(c). *See Lovern v. Edwards*, 190 F. 3d 648, 655 (4th Cir. 1999) ("[T]he Constitution does not contemplate the federal judiciary deciding issues of state law among non-diverse litigants.").   The state law defamation claim against the media defendants should be dismissed without prejudice, allowing Plaintiff to pursue the claim in state court.

Moreover, the undersigned finds that Plaintiff's state common law defamation claim against the media defendants does not form a part of the same case or controversy and does not derive from a common nucleus of operative fact as Plaintiff's federal claims and related state law claims asserted against the alleged state actor defendants. These two sets of claims would not be expected to be tried in one proceeding. Plaintiff's allegations concerning the media defendants' conduct in allegedly defaming Plaintiff involve different factual and legal issues from Plaintiff's allegations concerning the alleged state actor defendants' conduct in allegedly unlawfully searching, seizing, and using excessive force in arresting Plaintiff on November 8, 2010, and re-arresting him on January 14, 2011. See 28 U.S.C. § 1367; *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

In *United Mine Workers v. Gibbs*, the United States Supreme Court determined that once a district court had valid jurisdiction over a federal claim, it could, in its discretion, exercise supplemental jurisdiction over additional state claims if they arose out of "a common nucleus of operative fact" such that the plaintiff would ordinarily be expected to try the claims in one judicial proceeding. *Id.* at 725; *see also Hales v. Winn-Dixie Stores, Inc.*, 500 F.2d 836, 848 & n.12 (4th Cir. 1974) (stating that supplemental jurisdiction does not encompass claims when one count is "separately maintainable and determinable without any reference to the facts alleged or contentions stated in or with regard to the other count"). Supplemental jurisdiction, as codified in 28 U.S.C. § 1367, allows a federal court to hear "other claims that are so related to claims in the action within [the court's] original jurisdiction that they form a part of the same case or controversy." *See* 28 U.S.C. § 1367(a). Once a federal court has determined that state claims are so related, factors to inform the decision of whether the federal court should exercise jurisdiction over the

36

pendant or supplemental state claims are: whether the state law claims involve novel or complex issues of state law; whether the state law claims predominate; whether the federal claims justifying the court's jurisdiction remain in the case; and whether there are other compelling reasons.  In deciding whether to dismiss state law claims or to remand a removed case back to state court, the federal court should also consider principles of economy, convenience, fairness, and comity, and whether the efforts of a party in seeking remand amount to a manipulative tactic.  *See* 28 U.S.C. § 1367(c); *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611 (4th Cir 2001); *White v. County of Newberry, South Carolina*, 985 F.2d 168 (4th Cir. 1993).

In the instant case, the purely state common law defamation claim against the media defendants (Count 9) is separately maintainable and determinable without reference to the facts alleged or contentions stated in or with regard to the other counts (Counts 1-8, and 10-13).  Plaintiff alleges that Defendant Singleton made false statements about Plaintiff during a news conference, without justification or privilege, and alleges that the media defendants published the false and defamatory words with constitutional and common-law malice and without privilege of fair report and with knowledge that the statements were false, or with reckless disregard as to whether they were false or not. *See* ECF No. 1, p. 60-64.  The claims against the two sets of defendants in this case are separate and distinct and arise from two different sets of facts.  The issue of whether Plaintiff was unlawfully searched, seized, and arrested with excessive force by the alleged state actor defendants is completely unrelated to the issue of whether Plaintiff was

defamed by the media defendants.  Plaintiff's state defamation claim against the media defendants does not fall within this Court's supplemental jurisdiction.[17]

Even if the state law defamation claim against the media defendants involved a common nucleus of operative fact, this Court should exercise its discretion to summarily dismiss the claim, without prejudice, based on consideration of the factors in 28 U.S.C. § 1367(c).  The defamation claim involves relatively complex, apparently unsettled issues of South Carolina defamation law.  The adjudicating court must determine the issue of whether Plaintiff would be considered a public figure or a private figure under *Erickson v. Jones St. Publrs., LLC*, 629 S.E.2d 653 (S.C. 2006) or, using the terminology employed by the South Carolina Supreme Court in *Erickson* and by the Fourth Circuit Court of Appeals in *Hatfill v. N.Y. Times Co.*, 532 F.3d 312 (4th Cir. 2008), whether Plaintiff would be considered a private figure, a limited-purpose public figure, an all-purpose public figure, or an involuntary public figure.  This determination of Plaintiff's status would then dictate whether, as a matter of law, the full protection of state defamation law or a narrowed protection applies to Plaintiff. *See Hatfill*, 532 F.3d at 312; *Erickson*, 629 S.E.2d at 664-67. This district court has previously expressed its concern regarding the apparent confusion under South Carolina law as to the appropriate standard of liability to be applied to a media defendant with regard to private figure plaintiffs and matters of public concern. *See Floyd*

---

[17]  In contrast, Plaintiff's state constitutional and common law tort claims against the alleged state actor defendants do arise from a common nucleus of operative facts with the federal claims against these same defendants and are, therefore, within the Court's supplemental jurisdiction.

*v. WBTW*, C.A. No.: 4:06-cv-3120-RBH, 2007 WL 4458924, at *2-4 (D.S.C. 2007)[18]  The

undersigned is also concerned about the apparently unsettled nature of South Carolina law

with regard to the recognition and application of the fair report privilege. *See West v.*

---

[18]  In *Floyd*, United States District Judge R. Bryan Harwell expressed that the Court "is especially troubled by the state of defamation law in South Carolina." *Floyd*, 2007 WL 4458924, at *3 n.3. South Carolina, like a large majority of jurisdictions appears to have held, in *Holtzscheiter v. Thomson Newspapers, Inc.*, 506 S.E.2d 497 (S.C. 1998) (*Holtzscheiter II*), that, in cases involving a private figure plaintiff and a matter of public concern, a private figure plaintiff may recover compensatory damages by showing negligence on the part of the publisher. *Holtzscheiter II*, 506 S.E.2d at 508-09 (Toal, J., concurring).  Also, Judge Ralph King Anderson's widely used book of jury instructions states: "To recover for defamation, a private-figure plaintiff must prove the actions of the defendant were negligent." Ralph King Anderson, Jr., *South Carolina Requests to Charge - Civil* § 14-11 (2002).  However, in *Erickson*, the South Carolina Supreme Court appeared to depart from *Holtzscheiter II* and earlier South Carolina cases that, at the very least, implied that negligence was the appropriate standard. In *Erickson*, the court stated that in cases involving matters of public concern, a private figure plaintiff was required "to plead and prove common law malice, demonstrate the falsity of the statements, and show actual injury in the form of general or special damages." *Erickson*, 629 S.E.2d at 670.  The court in *Erickson* acknowledged Chief Justice Toal's concurrence in *Holtzscheiter II*, which suggested that South Carolina adopt the negligence standard for private figure plaintiffs, but stated "the plurality of the Court in *Holtzscheiter II* chose to retain common law malice and accompanying presumptions in private-figure actions. *Id.*  According to the court in *Erickson*, the question of whether to apply a negligence standard of liability to cases involving private figures and matters of public concern had never been properly before the court. *Id.* at n.10.  In *Erickson*, the court appeared to state that because the question was never properly before the court, the court had never been given the opportunity to change the standard of liability from common law malice to negligence. Thus, the *Erickson* court seemed to conclude that because the issue had never been directly addressed and a plurality of the court in *Holtzscheiter II* retained common law malice, South Carolina precedent required a common law malice standard of liability for private individuals to recover against media defendants.  In *Floyd*, despite Judge Harwell's disagreement with the *Erickson* court's apparent pronouncement of South Carolina's standard of liability for private figure plaintiffs (*i.e.* malice vs. negligence) and the fact that most other states use a negligence standard, this Court sitting in diversity, followed the apparent South Carolina law in *Erickson*.  The South Carolina Supreme Court has not revisited the issue since *Erickson*.

*Morehead*, 2011 WL 4025724 (S.C. Ct. App. Sept. 7, 2011).[19]    Given the

---

[19]    The South Carolina Court of Appeals, in *West v. Morehead*, 2011 WL 4025724 (S.C. Ct. App. Sept. 7, 2011), held that "[i]n order to recover punitive damages from a media defendant, a private-figure plaintiff must prove by clear and convincing evidence that the defendant acted with constitutional actual malice." *West*, 2011 WL 4025724, at *3 (citing *Erickson*, 629 S.E.2d at 665). The *West* court also considered the fair report privilege and, while holding that "[f]air and impartial reports in newspapers of matters of public interest are qualifiedly privileged," *Id.* at *2 (citing *Jones*, 158 S.E.2d at 913), ruled that the media defendants in that case were not entitled to a directed verdict on the basis that the fair report privilege immunized them from liability. The court held that "[u]nder this defense [of qualified privilege], one who publishes defamatory matter concerning another is not liable for the publication if (1) the matter is published upon an occasion that makes it [qualifiedly or] conditionally privileged, and (2) the privilege is not abused." *Id.* at *2 (citing *Swinton Creek Nursery v. Edisto Farm Credit*, 514 S.E.2d 126, 134 (1999)). The Court of Appeals held that "[w]hether the occasion is one which gives rise to a qualified privilege is a question of law." *Id.* (citing *Swinton Creek*, 514 S.E.2d at 134). Because the alleged defamatory article related to the content of public files on judicial proceedings, the trial court in *West* ruled that the publication of the article was subject to the fair report privilege. However, the appellate court in *West* pointed out that "[t]he privilege extends only to a report of the contents of the public record and any matter added to the report by the publisher, which is defamatory of the person named in the public records, is not privileged." *Id.* at *2 (citing *Jones*, 158 S.E.2d at 913). "Where there is conflicting evidence, 'the question whether [a qualified] privilege has been abused is one for the jury.'" *Id.* (citing *Swinton Creek*, 514 S.E.2d at 134). The *West* court also stated:

> In *Swinton Creek*, the [South Carolina] supreme court cited *Woodward v. South Carolina Farm Bureau Insurance Co.*, 277 S.C. 29, 32-33, 282 S.E.2d 599, 601 (1981), for this proposition: "While abuse of [the conditional] privilege is ordinarily an issue [reserved] for the jury, . . . in the absence of a controversy as to the facts, . . . it is for the court to say in a given instance whether or not the privilege has been abused or exceeded." *Swinton Creek*, 334 S.C. at 485, 514 S.E.2d at 134 (bracketed language omitted in *Swinton Creek*); *see also Padgett*, 278 S.C. at 33, 292 S.E.2d at 34 (reversing the denial of a directed verdict motion based on fair report privilege where the "record conclusively show[ed] that the articles . . . were accurate reports of the documents as they were filed in the litigation").

*Id.* at *2 n.3. The Court of Appeals explained this seemingly contradictory standard and held that the trial court properly submitted the question of fact as to the existence of common law malice to the jury (for its determination of whether actual damages should be awarded), but erred in submitting the question of constitutional malice to the jury (for

recommended summary dismissal of Plaintiff's claims against Defendants Norton, Weaver, Whitfield, Adams, and Simmons, and the recommended stay of Plaintiff's claims against Defendants Singleton, Oconee County, Jenkins, M. Craig, H. Craig, Moulder, the Unidentified Oconee County Deputy, and Harris, the state law defamation claim predominates in this case over the federal claims that justified the court's original jurisdiction of the dismissed and stayed federal claims.  The other compelling reason to summarily dismiss Plaintiff's state law defamation claim against the media defendants is to serve this Court's interest in judicial economy, convenience, fairness, and comity. Summary dismissal of Plaintiff's defamation claim, without prejudice, in this Court will, of course, allow Plaintiff to pursue the claim in state court, without delay.

### RECOMMENDATION

Accordingly, it is recommended that:  (1)  Plaintiff's official capacity and individual capacity claims against Defendants Norton, Weaver, Whitfield, Adams, and Simmons be summarily dismissed; (2)  Plaintiff's claim for declaratory and injunctive relief, challenging the constitutionality of S.C. Code § 56-7-10, be summarily dismissed; (3)  Plaintiff's official capacity claims for monetary damages against Defendants Singleton, Jenkins, M. Craig,

---

its determination of whether punitive damages should be awarded).  The Court of Appeals cited the *Erickson* decision as precedent that an appellate court must review a jury's determination of actual malice as a matter of law, unlike the appellate review of other factual findings of a jury.

and Unidentified Oconee County Deputy be summarily dismissed; (4)  Plaintiff's § 1983

and related state law, individual capacity claims for monetary damages against Defendants

Singleton, Oconee County, Jenkins, M. Craig, H. Craig, Moulder, and the Unidentified

Oconee County Deputy be stayed until the final termination of Plaintiff's pending state court

criminal proceeding, at which time Plaintiff should petition this Court to lift the stay in this

action; (5)  Plaintiff's related, individual capacity § 1983 defamation claims for monetary

damages against Defendants Singleton and Jenkins be, likewise, stayed until the final

termination of Plaintiff's pending state court criminal proceeding; (6)  Plaintiff's official

capacity and individual capacity claim for monetary damages against Defendant Harris be,

likewise, stayed until the final termination of Plaintiff's pending state court criminal

proceeding; and (7)  Plaintiff's unrelated state law defamation claim against Defendants

*The Journal*, Sullivan, Sibley, Leonard, Edwards, Oconee Publishing, and The Edwards

Group be summarily dismissed, without prejudice.

Plaintiff's attention is directed to the important notice on the next page.


January 9, 2012                                    s/ Kevin F. McDonald
Greenville, South Carolina                         United States Magistrate Judge


42

**Notice of Right to File Objections to Report and Recommendation**

The petitioner is advised that he may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Larry W. Propes, Clerk of Court**
**United States District Court**
**300 East Washington Street, Room 239**
**Greenville, South Carolina 29601**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).